In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-02-00061-CR
______________________________


VAUGHN EARLE HARVEY, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 402nd Judicial District Court
Wood County, Texas
Trial Court No. 16,931-2001


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N

            After she turned eighteen years of age in 2001, Jennifer Simmons for the first time disclosed
the paternity of her son, conceived in 1995 when Jennifer was only twelve. Her outcry, to her adult
boyfriend, Vonnie Kelly, was that her stepfather, Vaughn Earle Harvey, had sexually assaulted her
then and was the father of her son. When Jennifer told Kelly the details of her ordeal, he advised
her to contact the authorities. At the direction of Child Protective Services and the police, blood
samples were taken from Harvey, Simmons, and her son for paternity testing. The conclusion of
these tests indicated there was a 99.99999% probability of Harvey's paternity. 
            A Wood County jury convicted Harvey of aggravated sexual assault of a child and assessed
punishment at life imprisonment and a $10,000.00 fine. Harvey appeals with eight points of error
that we, for purposes of analysis, group into four categories. Harvey contends on appeal that
(1) Article 38.072 of the Texas Code of Criminal Procedure does not permit the State to use an
outcry witness if the outcry statement was made when the victim was older than twelve years of age,
(2) Harvey was denied a fair and impartial jury because potential jurors were solicited to donate their
juror fees to certain state-sponsored funds, (3) the trial court erred in not striking a veniremember
for cause, and (4) the selection of an all-white jury violates equal protection under the Fourteenth
Amendment. We affirm.
 
 
 
Hearsay Statement of Victim
            Harvey contends in his fourth, fifth, and sixth points


 of error that Article 38.072 of the Texas
Code of Criminal Procedure, which permits the hearsay statement of a child abuse victim who was
twelve years of age or younger at the time of the offense, does not extend to child abuse victims'
outcry statements made after they turn thirteen years of age. Article 38.072 provides:
This article applies to a proceeding in the prosecution of an offense . . . if committed
against a child 12 years of age or younger . . . . [and] only to statements that describe
the alleged offense that: (1) were made by the child against whom the offense was
allegedly committed; and (2) were made to the first person, 18 years of age or older,
other than the defendant, to whom the child made a statement about the offense. 

Tex. Code Crim. Proc. Ann. art. 38.072 (Vernon Supp. 2004).

            Although Simmons was twelve years old at the time of the charged offense, Harvey argues
that Article 38.072 does not apply in this case because Simmons' outcry statement was delayed
beyond her thirteenth birthday. According to the record, Simmons was eighteen years old at the time
of her outcry and nineteen at the time of trial. Harvey argues it is impermissible to allow hearsay
testimony of an outcry statement of a victim who then is thirteen or older, and that doing so in this
case, although it may not have affected the jury's decision as to his guilt, was harmful to the jury's
decision regarding punishment. 
 
            Trial courts are afforded broad discretion in determining the admissibility of outcry
statements, and the decision to admit such evidence will not be disturbed absent a clear abuse of that
discretion. Garcia v. State, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990). In reviewing matters
committed to a trial court's discretion, appellate courts may not substitute their judgment for that of
the trial court unless the court acted in an arbitrary or unreasonable manner, without reference to any
guiding rules or principles. Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). 
In this case, the trial court expressed some doubt as to whether the Legislature contemplated that
Article 38.072 might encompass an outcry statement six years after the alleged abuse, but found that
the statement was reliable based on the time, content, and circumstances, and that the situation
presented in this case fell within the parameters of the exception.
            In Manuel v. State, No. 03-96-00185-CR, 1997 Tex. App. LEXIS 3298 (Tex. App.‒Austin
June 26, 1997, pet. ref'd) (not designated for publication), the Third District Court of Appeals dealt
with a similar, though less extreme, situation. The appellant in Manuel argued that, even though the
complainant was allegedly molested when she was twelve years of age or younger, her outcry
statement was not made until after her thirteenth birthday, rendering the statute inapplicable. Id. at
*6–7. Based on its reading of the statute, however, the Third District Court of Appeals reasoned that
"Article 38.072 applies to proceedings in the prosecution of offenses committed against children
twelve years of age or younger" and "does not require that the outcry statement be made before the
victim becomes thirteen years of age." Id. at *7. Instead, the determination of whether an outcry
statement should be admitted "must be determined by the circumstances of each case." Id. We note
that Article 38.072 has been referenced in cases in which the complainant was thirteen years old or
older at the time of trial. See, e.g., Krupa v. State, No. 05-02-00116-CR, 2003 Tex. App. LEXIS 242
(Tex. App.‒Dallas Jan. 14, 2003, pet. ref'd) (not designated for publication) (complainant eighteen
years old at time of trial—apparently under eighteen at time of outcry); Gurka v. State, 82 S.W.3d
416 (Tex. App.‒Austin 2002, pet. ref'd) (complainant fifteen years old at time of trial).
            In each of those cases, however, the victim's outcry statement was made while the victim was
legally still a minor. In this case, Simmons' outcry came after she had reached the age of majority. 
Harvey asserts that Article 38.072 was not designed to protect adults, but inarticulate and frightened
children. The language of the statute supports that assertion. Article 38.072 requires that, for outcry
statements to be admissible, (1) an offense must have been "committed against a child 12 years of
age or younger," and (2) outcry statements must have been "made by the child" victim. Tex. Code
Crim. Proc. Ann. art. 38.072.
            The courts should interpret terms used in the Texas Code of Criminal Procedure in
accordance with "their usual acceptation in common language, except where specially defined." 
Tex. Code Crim. Proc. Ann. art. 3.01 (Vernon 1977). There is no definition of "child" in Article
38.072. The words "child," "minor," and "adult" have been defined variously by statutes having
various purposes, but seem to separate into two principal groups.
            In a number of definitions, to be a "child" or a "minor," the individual must be under
eighteen, must have never married, and must not have had his or her disabilities removed. See Tex.
Code Crim. Proc. Ann. art. 56.32(a)(1) (Vernon Supp. 2004) (defining "child" for Crime Victims'
Compensation Act); Tex. Fam. Code Ann. § 101.003 (Vernon 2002) (defining "child," "minor,"
and "adult" for matters affecting parent-child relationship); Tex. Prob. Code Ann. § 3(t) (Vernon
2003) (defining "minor" for all Probate Code purposes except regarding guardianships); Tex. Prob.
Code Ann. § 601 (Vernon 2003) (defining "minor" for guardianships).
            In numerous other definitions, to be a "child" or "minor," the individual simply must be under
eighteen years of age. See Tex. Code Crim. Proc. Ann. art. 63.001 (Vernon Supp. 2004) ("child"
for Chapter 63, on missing children and missing persons); Tex. Fam. Code Ann. § 152.102 (Vernon
2002) ("child" for Chapter 152, Uniform Child Custody Jurisdiction and Enforcement Act); Tex.
Pen. Code Ann. § 43.24 (Vernon 2003) ("minor" for sale, distribution, or display of harmful
material to minor); § 43.25 (Vernon Supp. 2004) ("Sexual Performance by a Child"); § 43.251
(Vernon 2003) ("Employment Harmful to Children"); § 43.26 (Vernon 2003) ("Possession or
Promotion of Child Pornography"); § 46.06 (Vernon 2003) ("Unlawful Transfer of Certain
Weapons"). Sometimes the line is drawn at a different age. See, e.g., Tex. Pen. Code Ann. § 46.13
(Vernon 2003) ("child" as younger than seventeen for "Making a Firearm Accessible to a Child").
            The two groups are distinguishable in that those that draw the line simply at eighteen years
of age are intent on protecting the child's person, while those that add marriage or removal of
disabilities are aimed at protecting the individual's legal or business affairs. Since Article 38.072
was designed to protect the child's person, we conclude it belongs in the group of statutes that draw
the line simply at age eighteen. That conclusion is further supported in the very language of Article
38.072 explicitly requiring that the person to whom the outcry is made must be at least eighteen years
of age at the time of the outcry while using the term "child" in referring to the victim making the
outcry statement.
            Therefore, we hold that, for Article 38.072 to apply, not only must the offense have been
committed against a child twelve years of age or younger, but also the victim, while still a
child—that is, not having reached his or her eighteenth birthday—must have confided the details of
the ordeal to a person eighteen years of age or older. Failure of the second criterion renders Article
38.072 inapplicable. As a result, the trial court should not have permitted Kelly to testify with the
content of Simmons' outcry statement.
            As part of Harvey's argument against the admissibility of Simmons' outcry statement, he
contends that, even if Article 38.072 did apply in this case, admission of the testimony would be
prohibited by the Confrontation Clause of the Sixth and Fourteenth Amendments. Addressing this
problem in Buckley v. State, 758 S.W.2d 339 (Tex. App.‒Texarkana 1988), aff'd, 786 S.W.2d 357
(Tex. Crim App. 1990), this Court held that the right to confrontation was satisfied by Article
38.072's requirement that each case be judged on its own merits, admitting only those statements
found reliable based on the time, content, and circumstances. Id. at 343–44 (discussing significance
of Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b)(2)).
            The Texas Court of Criminal Appeals affirmed, further stating that the opportunity to cross-examine the declarant of an out-of-court statement was sufficient to pass constitutional muster by
providing an adequate opportunity for confrontation. Buckley v. State, 786 S.W.2d 357, 358–60
(Tex. Crim. App. 1990) (citing Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b)(3), which requires
that "the child testifies or is available to testify at the proceeding in court or in any other manner
provided by law"). This is true even if literal confrontation is not afforded contemporaneously with
the statement itself. Id. at 360 n.3 (discussing Coy v. Iowa, 487 U.S. 1012 (1988)). In the case at
bar, Harvey had ample opportunity not only to cross-examine Kelly as to Simmons' outcry statement,
but also to cross-examine Simmons herself. Therefore, admitting Kelly's outcry testimony was not
constitutional error.
            The State asserts that, even if the trial court erred in admitting the testimony as an outcry
statement, there was no error, since the admission was proper as an excited utterance. Though the
record indicates the trial court admitted the testimony only as an outcry statement, if the testimony
was admissible as an excited utterance, we should find no error.
If there is evidence supporting the trial court's decision to admit evidence, there is no
abuse and the appellate court must defer to that decision. Powell, 63 S.W.3d at 438;
Fairow, 943 S.W.2d at 901. Even when the trial judge gives the wrong reason for
his decision, Salas v. State, 629 S.W.2d 796, 799 (Tex. Crim. App. 1981), if the
decision is correct on any theory of law applicable to the case it will be sustained. 
[Citations omitted.] This is especially true with regard to the admission of evidence. 
[Citations omitted.]

Osbourn v. State, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002). Therefore, we now address the claim
that the testimony was admissible as an excited utterance.
The excited utterance exception to the hearsay rule is based upon the belief that
excitement stills the capacity for reflection so that utterances made by a declarant
while excited by a startling event are free from conscious fabrication. 2 GOODE,
WELLBORN & SHARLOT, TEXAS PRACTICE: TEXAS RULES OF EVIDENCE:
CIVIL & CRIMINAL § 803.3 (3d ed. 2002). The exception has three requirements:
 


             (1) the statement must be the product of a startling occurrence that produces a state              of nervous excitement in the declarant and renders the utterance spontaneous and                            unreflecting,
 
(2) the state of excitement must still so dominate the declarant's mind that there is no
time or opportunity to contrive or misrepresent, and
 
(3) the statement must relate to the circumstances of the occurrence preceding it.
 
Sellers v. State, 588 S.W.2d 915, 918 (Tex. Crim. App. [Panel Op.] 1979). The court
of criminal appeals has more recently explained:
 
It is not dispositive that the statement is an answer to a question or that it was
separated by a period of time from the startling event; these are simply factors to
consider in determining whether the statement is admissible under the excited
utterance hearsay exception. The critical determination is "whether the declarant was
still dominated by the emotions, excitement, fear, or pain of the event" or condition
at the time of the statement.
 
Salazar, 38 S.W.3d at 154 [citations omitted] (quoting McFarland v. State, 845
S.W.2d 824, 846 (Tex. Crim. App. 1992)). The inquiry should focus on whether the
cumulative effect of the three Sellers requisites shows the statement to be sufficiently
reliable. Sellers, 588 S.W.2d at 918.
Hughes v. State, No. 12-02-00285-CR, 2003 Tex. App. LEXIS 6980, at *9–10 (Tex. App.‒Tyler
Aug. 13, 2003, no pet. h.). The startling event need not be the original offense, but can be a
subsequent event, so long as it is itself startling or shocking. Hunt v. State, 904 S.W.2d 813, 816
(Tex. App.‒Fort Worth 1995, pet. ref'd) (television report of unrelated rape sufficient to excite
victim's utterance about sexual assault of three months earlier). A shocking or startling event,
however, must trigger the utterance. See Sellers v. State, 588 S.W.2d 915, 918–19 (Tex. Crim. App.
[Panel Op.] 1979); Hunt, 904 S.W.2d at 816.
 
            Simmons testified that, at the time of her report to Kelly, she had had "issues" regarding "her
depression," presumably resulting from the assault six years before, and that, in response to Kelly's
questions about who fathered her son, she "broke down" and told Kelly what she "had been hiding,"
that is, the details of Harvey's assault and the fact that Harvey was the father. Kelly testified that
Simmons, when she told him, "was very upset about it, crying." While there is no question the
whole matter was very upsetting to Simmons, the test is whether, at the time of the utterance,
Simmons was under domination of the emotions triggered by a startling event, either the original
assault or the conversation with Kelly. 
            We conclude Simmons' outcry does not qualify as an excited utterance. While the original
assault was undoubtedly shocking, the record does not reflect Simmons was still, six years later,
dominated by the excited state produced by the attack. Nor does the record reflect that Kelly's
questioning was the type of startling or shocking event contemplated by the excited utterance rule. 
Therefore, under neither the outcry rule nor the excited utterance rule should the testimony have been
admitted.
            Nonetheless, we believe any error admitting Kelly's testimony was harmless. Under the
Texas Rules of Appellate Procedure, any error, other than constitutional error, committed by the trial
court that does not affect substantial rights must be disregarded. Tex. R. App. P. 44.2(b). We review
the record as a whole to determine whether the error had a substantial influence on the jury's verdict. 
Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).
 
            The evidence properly admitted at trial included Simmons' own testimony that Harvey had
molested her two or three times a month since she was eight years old and that he assaulted and
impregnated her when she was twelve. The evidence also showed that Simmons, as a result of this
pregnancy, gave birth to a son who, according to paternity testing, was fathered by Harvey to a
99.99999% certainty. In light of this evidence, Kelly's testimony was merely cumulative of other
evidence properly admitted. Harvey's substantial rights were not affected. We overrule this
contention of error.
Donation of Juror Reimbursement
            In his first, second, and third points of error, Harvey contends he was deprived of his Sixth
and Fourteenth Amendment right to a fair and impartial jury because potential jurors (one of which
was seated on the petit jury and served as the foreman) were asked to contribute to child services and
victims' compensation funds sometime before voir dire. He argues that asking potential jurors to
contribute to programs benefitting children similarly situated to his alleged victim creates an
unconstitutional conflict of interest, and that he should have been granted, additional peremptory
strikes in order to remove the "financially biased" jurors. "Whether a juror's partiality may be
presumed from the circumstances is a question of law." Ruckman v. State, 109 S.W.3d 524, 528
(Tex. App.‒Tyler 2000, no pet.). We review those questions de novo. Maestas v. State, 987 S.W.2d
59, 62 (Tex. Crim. App. 1999).
            The alleged conflict arises when jurors, who have opted to donate their ten-dollar-a-day juror
reimbursement to programs benefitting child abuse victims, are seated on a jury asked to impartially
weigh the evidence against an alleged child abuser. Harvey reasons that jurors making such a
donation would be impliedly or inferentially biased against an alleged child abuser because the act
of donating would ally them "financially with the victim . . . before hearing a word of testimony" and
make "them financial partners with the State." At issue is Section 61.003 of the Texas Government
Code, which reads:
§ 61.003. Donation of Reimbursement

(a) Each prospective juror reporting for jury service shall be personally provided a
form letter that when signed by the prospective juror directs the county treasurer to
donate all of the prospective juror's reimbursement for jury service to:

            (1) the compensation to victims of crime fund under Subchapter B, Chapter
56, Code of Criminal Procedure;

            (2) the child welfare board of the county appointed under Section 264.005,
Family Code;

            (3) any program selected by the commissioners court that is operated by a
public or private nonprofit organization and that provides shelter and services to
victims of family violence; or

            (4) any other program approved by the commissioners court of the county.

Tex. Gov't Code Ann. § 61.003(a) (Vernon Supp. 2004).

            Citing United States v. Nell, 526 F.2d 1223 (5th Cir. 1976), Harvey notes that actual bias is
manifested in two ways: "by express admission or by proof of specific facts showing such a close
connection to the circumstances at hand that bias must be presumed." Id. at 1229. Harvey's
reasoning is substantially the same as the appellant's reasoning in Boone v. State, 60 S.W.3d 231
(Tex. App.‒Houston [14th Dist.] 2001, pet. ref'd), asserting that potential jurors choosing to donate
according to Section 61.003 are presumptively biased against someone accused of aggravated assault
of a child because the existence of child services and victims' compensation funds and the
opportunity to donate to them "improperly heightened their sympathies for the victim of the crime." 
Id. at 236. The same issue was raised in Ruckman when the appellant argued that "individuals who
care enough about victims of crime or children to donate their ten-dollar-a-day juror fee are biased
as a matter of law." Ruckman, 109 S.W.3d at 528. In response, the Twelfth District Court of
Appeals held there was no error in the trial court's refusal to dismiss prospective jurors that donated
their juror payments because there was no implied bias. Id. While a criminal defendant is certainly
entitled to a fair and impartial trial under both the federal and state constitutions, "[a] defendant's
entitlement . . . is entirely distinct from the question of whether the crime itself is one which arouses
[a juror's] moral passion" and does not, therefore, require "a jury impartial to the underlying crime
itself." Id. (citing United States v. Johnson, 990 F.2d 1129, 1133 (9th Cir. 1993)); accord Boone,
60 S.W.3d at 237.
            Harvey contends the Ruckman court failed to adequately address the issue because certain
veniremembers were not only partial to the underlying crime, as indicated by their willingness to
donate to the child services and victims' compensation funds, but were financially allied with the
victim. Harvey compares these general charitable donations to a juror helping to reimburse a bank
while hearing the case against the person who allegedly robbed the bank of its funds or paying the
funeral costs of a murder victim while being asked to render a verdict against the victim's alleged
murderer. On the most basic level, we cannot agree that jurors—reimbursed for their service and
not for the verdict they reach—become "financial partners with the State" when they donate to
charitable causes that may indirectly benefit one or the other party. Only if a juror had been asked
to donate to a fund specifically designed to aid or compensate Simmons, the victim in this case, for
a rape allegedly perpetrated by Harvey, would the situation comport with Harvey's analogies and
merit a ruling the juror was impliedly biased.
            The cases cited by Harvey in an attempt to buttress his position only weaken it, by
emphasizing the extreme situations that would justify a finding of implied bias. In Smith v. Phillips,
455 U.S. 209 (1982), Justice O'Connor provided three examples of some exceptional situations that
would justify a finding of implied bias that, if not corrected, would be manifestly unjust and amount
to a miscarriage of justice: "a revelation that the juror is an actual employee of the prosecuting
agency, that the juror is a close relative of one of the participants in the trial or the criminal
transaction, or that the juror was a witness or somehow involved in the criminal transaction." Id. at
222 (O'Connor, J., concurring). A sampling of the cases cited by Harvey includes United States v.
Colombo, 869 F.2d 149 (2d Cir. 1989) (veniremember deliberately concealing her relationship to
government attorney in RICO case, biased per se); Marshall v. State, 664 So.2d 302 (Fla. Dist. Ct.
App. 1995) (juror who worked at defendant's jail and acquired knowledge of facts not in evidence,
presumptively prejudiced); and State v. Kauhi, 948 P.2d 1036 (Haw. 1997) (implying bias where
juror worked for same employer as prosecuting attorney), none of which suggest anything other than
the limited applicability of the doctrine of implied bias.
 
            All of the caselaw touching on this issue stresses partiality as the result of direct connections
between juror and party that would be extraordinarily difficult for a person of common intelligence
and reason to overcome. In this case, however, no such connection exists. "The doctrine of implied
bias is limited in application to those extreme situations where the relationship between a prospective
juror and some aspect of the litigation is such that it is highly unlikely that the average person could
remain impartial in his deliberations under the circumstances." Ruckman, 109 S.W.3d at 528 (citing
Person v. Miller, 854 F.2d 656, 664 (4th Cir. 1988)). A juror may deplore the crime underlying the
action in which he or she has been called on to serve, even donating to general funds designed to
assist victims of that crime, and still be able to impartially weigh the evidence presented as to a
defendant's guilt or innocence and, if the defendant is found guilty, fairly assess punishment.
Challenge for Cause
            In his seventh point of error, Harvey contends the trial court erred in refusing to strike a
veniremember for cause, claiming that her responses during voir dire demonstrated bias or prejudice
against applicable law. See Tex. Code Crim. Proc. Ann. art. 35.16(c)(2) (Vernon Supp. 2004). 
Specifically, Harvey asserts that one of the veniremembers equivocated when asked if she would be
able to consider the entire range of punishment, and that the trial court's refusal to strike her for cause
forced him to use a peremptory strike he otherwise would have used to prevent another objectionable
veniremember from becoming a juror.


 We disagree.
            We afford the trial court great deference in exercising its discretion as to a party's challenge
for cause and will not disturb the trial court's ruling absent a clear abuse of that discretion. Feldman
v. State, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002). Harvey's objection to veniremember Phelps
is based on her reservations about being able to consider the full range of punishment. Phelps,
however, stated nothing more than that she thought it might be difficult to consider the lower range
of punishment in certain situations. After both parties were permitted to ask questions of the venire,
a number of veniremembers, including Phelps, were called to the bench for individual questioning
to clarify earlier answers. Phelps' interview was recorded as follows:
            [Prosecutor]: . . . [C]an you consider the entire range of punishment, the
minimum being 5 years probation, the, the maximum being life in the penitentiary
and a $10,000 fine or anything in between?

            PANEL MEMBER PHELPS: I could consider it but in all honesty, it would
be very difficult.

            [Prosecutor]: Whether it's difficult or one way or the other is not the test. At
this point, it's can you consider the entire range of punishment?

            PANEL MEMBER PHELPS: Yes, sir. I'm sorry I confused you but it would
be very difficult.

            [Prosecutor]: But you are telling the Court and you are telling the lawyers
that at this point, you would be able to consider it?

            PANEL MEMBER PHELPS: Yes, sir.

            [Prosecutor]: It might be difficult at the point in time; but at this point in
time, you are open minded enough and stating under oath as a juror --

            PANEL MEMBER PHELPS: Yes, sir.

            [Prosecutor]: . . . that you will be able to consider, you will make your mind
up after you hear the evidence?

            PANEL MEMBER PHELPS: Yes, sir.

            [Defense Counsel]: Sorry [sic] asked so many questions. The question I have
is slightly different. Go back to what we were asking. If you found that person, not
Mr. Harvey, but you found him guilty of sexual assault of a child, in your mind,
could you, could you consider putting that person on probation, would you favor
probation?

            PANEL MEMBER PHELPS: If all the . . . yes, sir, I could consider it if I
knew all the facts and felt like everything was given the way it's supposed to be. Is
that okay?

            [Defense Counsel]: That's a great answer. 

The question at issue is whether Phelps could fully and fairly consider the entire range of
punishment. "When the record does not contain a clearly objectionable declaration by the
venireperson," as in this case, "or the record demonstrates a vacillating or equivocal venireperson,
we accord great deference to the trial judge who had the better opportunity to see and hear the
person." Swearingen v. State, 101 S.W.3d 89, 99 (Tex. Crim. App. 2003). After reviewing the
record, we cannot say the trial court erred in denying Harvey's challenge for cause.
Equal Protection
            Harvey, an African-American, contends in his eighth point of error that his right to equal
protection under the Fourteenth Amendment was violated when the trial court refused his request
to include on the jury panel the venire's only African-American. No peremptory strikes were used
in an attempt to exclude this veniremember and, therefore, Harvey presents no Batson/Edmonson
challenge. See generally, Batson v. Kentucky, 476 U.S. 79 (1986); Edmonson v. Leesville Concrete
Co., 500 U.S. 614 (1991). Harvey's assertion, instead, appears to be that, because the Fourteenth
Amendment requires states to treat similarly situated persons alike, the seating of an all-white jury
violated his fundamental rights based on racial considerations, requiring this Court to apply a strict
scrutiny standard of review. This argument is wholly without merit.
            Harvey quotes extensively from Casarez v. State, 913 S.W.2d 468, 469–75 (Tex. Crim. App.
1994), in an attempt to justify the conclusion he is entitled to a jury that includes at least one or two
members of his race. Although the quoted material from Casarez deals with the discriminatory use
of peremptory strikes, Harvey insists "[h]e is not arguing the equal protection rights of excluded
minority jurors," but "is arguing his own equal protection right to a jury which is not completely of
a single race." Contrary to Harvey's position, however, the Texas Court of Criminal Appeals has
stated that, while defendants have the right not to have certain veniremembers serve as jurors, they
have "no right to have a particular veniremember serve on the jury." Johnson v. State, 43 S.W.3d
1, 6–7 (Tex. Crim. App. 2001) (citing Jones v. State, 982 S.W.2d 386, 393 (Tex. Crim. App. 1998)).
            In direct contrast to Harvey's claim that a minority defendant's rights are violated when tried
by an all-white jury, the Texas Court of Criminal Appeals emphasized that "even a jury from which
minority veniremen have been peremptorily struck in violation of the Equal Protection Clause, if it
is otherwise unobjectionable, is capable of rendering a verdict—even as to a defendant who is a
member of the same minority as the veniremen wrongfully struck." Batiste v. State, 888 S.W.2d 9,
12 (Tex. Crim. App. 1994). Federal law has long held that:
Fairness in selection has never been held to require proportional representation of
races upon a jury . . . . The number of our races and nationalities stands in the way
of evolution of such a conception of due process or equal protection. Defendants
under our criminal statutes are not entitled to demand representatives of their racial
inheritance upon juries before whom they are tried. But such defendants are entitled
to require that those who are trusted with jury selection shall not pursue a course of
conduct which results in discrimination.

Akins v. Texas, 325 U.S. 398, 403 (1945) (citations omitted). In other words, "[a]n accused is
entitled to have charges against him considered by a jury in the selection of which there has been
neither inclusion nor exclusion because of race." Cassell v. Texas, 339 U.S. 282, 287 (1950).
 
 
Conclusion
We reaffirm the constitutionality of Article 38.072 of the Texas Code of Criminal Procedure
and hold it applies to offenses committed against children twelve years of age or younger who,
before having reached the age of majority, cry out to a person eighteen years of age or older—even
if a victim's outcry is made after his or her thirteenth birthday. While we conclude the trial court
erred in its application of Article 38.072, we hold the error was harmless. Determining that a juror
who willingly contributes to child services and victims' compensation funds is not impliedly biased
against a defendant accused of aggravated sexual assault of a child, we conclude Harvey was not
deprived of the right to a fair and impartial jury. Similarly, we hold that neither this right nor the
right to equal protection under the law was infringed when Harvey, a member of a racial minority,
was refused a request to include at least one member of the same minority on the jury. 
We, therefore, affirm the judgment of the trial court.
 
                                                                        Josh R. Morriss, III
                                                                        Chief Justice
 
Date Submitted:          October 30, 2003
Date Decided:             November 20, 2003
 
Publish