Opinion issued December 18, 2008

 









In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00212-CR






GERALD WAYNE GRAVES, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 405th District Court

Galveston County, Texas

Trial Court Cause No. 05CR2828












MEMORANDUM OPINION


 A jury convicted appellant, Gerald Wayne Graves, of murder. (1) Appellant had
two prior convictions--a robbery conviction in 1981 and conviction for delivery of
a controlled substance in 1991. The jury, having found the two punishment
enhancement paragraphs in the indictment true, assessed a life sentence to appellant. 
In four issues, appellant contends that the trial court erred in denying his motions for
a new trial and to suppress evidence and that the evidence presented was legally and
factually insufficient to support his conviction for murder.

 We affirm.

Background

 Appellant and the complainant, Juanita Gonzales, had a romantic relationship. 
The complainant attempted to break off the relationship with appellant. The
complainant's sister, Nellie Vargas, testified that appellant was jealous because the
complainant began a new relationship with another person. The complainant was a
paper carrier for Galveston County Daily News. Appellant helped the complainant
with her paper route in the predawn hours of October 9, 2005. Appellant and the
complainant were recorded together on surveillance video at the first stop of the
complainant's paper route--a Coast Guard facility on Harborside Drive in Galveston,
Texas--using a vehicle owned by the complainant. The complainant disappeared at
some time after the first stop of her paper route. Vargas filed a missing person report
with the police on October 9.

 On October 10, 2005, the complainant's home, which she shared with Vargas,
was set on fire. Later on October 10, the police went to appellant's residence to
investigate the complainant's disappearance. Appellant attempted to evade the police
by climbing through the ceiling of appellant's leased portion of a duplex and entering
the duplex of appellant's neighbor, Alfredo Cruz-Lopez. The police officers at the
scene interpreted the noise created by appellant's attempted escape as evidence that
the complainant was in danger. At approximately the same time that police made a
warrantless entry into appellant's residence, the complainant's body was discovered
underneath appellant's residence in plain view.

 Police exited appellant's residence when they discovered appellant had
escaped. The police went to Cruz-Lopez to obtain consent to search Cruz-Lopez's
residence for appellant. The police found appellant hiding under Cruz-Lopez's bed. 
The police arrested appellant and charged him with criminal trespass. When they
searched appellant, the police found a .25-caliber automatic cartridge and several of
the complainant's personal effects, including a credit card, car keys and a mobile
phone. 

 At trial, the State presented testimony that the complainant had been battered
and had died of strangulation and multiple gunshot wounds from a .25-caliber
automatic weapon. There was expert testimony that the complainant had been dead
between 24 and 48 hours when her body was discovered under appellant's residence. Motion for New Trial

 In his first issue, appellant argues that the trial court erred in denying his
motion for new trial because Section 61.003 of the Texas Government Code, which
allows prospective jurors to donate their jury pay to state approved funds, deprived
him of an impartial jury and therefore violates the Fifth and Fourteenth Amendments
of the United States Constitution and the Sixth Amendment of the Texas Constitution.

 Facts

 Appellant complains that the handout given to potential jurors by the district
clerk exceeded the form letter the legislature intended for jurors to be given. The
handout stated:

Chapter 61, Government Code, gives you the right to donate your jury
payment to the Crime Complainant's Compensation Fund or the County
Child Welfare Board. In addition to these two worthy recipients, the
Commissioners' Court may select any other program operated by a
public or private nonprofit organization that provides shelter and
services to complainants of family violence. These funds help
individuals and families who have been complainants of violent crimes
or who are in need of services provided by the various agencies. This
money goes toward helping your family, friends or neighbors who may
need help in times of crisis.


This statement was followed by a list of applicable charities.

 Analysis

 Appellant challenges section 61.003 facially and as applied to him. We review
a motion for new trial under an abuse of discretion standard. Lewis v. State, 911
S.W.2d 1, 7 (Tex. 1995). A facial challenge to a statute is the most difficult challenge
to mount successfully because an appellant must establish that no set of
circumstances exists under which the statute will be valid. Santikos v. State, 836
S.W.2d 631, 633 (Tex. Crim. App. 1992). A party has standing to challenge a
statute's constitutionality only when the statute adversely impacts him; a party has no
standing to challenge a statute's constitutionality when the statute may adversely
impact third parties. Id. (citing Broadrick v. Oklahoma, 413 U.S. 601, 610, 93 S Ct.
2908, 2915 (1973)). We presume that the statute is valid and that the legislature has
not acted unreasonably or arbitrarily. Rodriquez v. State, 93 S.W.3d 60, 69 (Tex.
Crim. App. 2002). The burden of establishing the statute's unconstitutionality rests
on appellant challenging the statute. Id. The constitutional standard for juror
impartiality is a question of law. Ruckman v. State, 109 S.W.3d 524, 527 (Tex.
App.--Tyler 2000, pet. ref'd) (citing Patton v. Yount, 467 U.S. 1025, 1037 n.12, 104
S. Ct. 2885, 2891 n.12 (1984)). We review this question of law de novo. Id. 

 Section 61.003, entitled "Donation of Reimbursement" provides:

(a) Each prospective juror reporting for jury service shall be personally
provided a form letter that when signed by the prospective juror directs
the county treasurer to donate all of the prospective juror's
reimbursement for jury service to:


 (1) the compensation to victims of crime fund under
Subchapter B, Chapter 56, Code of Criminal Procedure;


 (2) the child welfare board of the county appointed under
Section 264.005, Family Code;


 (3) any program selected by the commissioners court that is
operated by a public or private nonprofit organization and
that provides shelter and services to victims of family
violence; or


 (4) any other program approved by the commissioners court of
the county.


Tex. Gov't Code Ann. § 61.003 (Vernon Supp. 2008).

 Other courts of appeals have examined this statute. See Harvey v. State, 123
S.W.3d 623, 631 (Tex. App.--Texarkana 2003, pet. ref'd); Ruckman v. State, 109
S.W.3d 524, 526-29 (Tex. App.--Tyler 2000, pet. ref'd); Boone v. State, 60 S.W.3d
231, 236-37 (Tex. App.--Houston [14th Dist.] 2001, pet. ref'd). The appellant in
Harvey made a similar argument to that made by appellant in the present case. See
Harvey, 123 S.W.3d at 631. The appellant in Harvey argued that his Sixth and
Fourteenth Amendment rights to a fair and impartial jury were violated when potential
jurors were informed of their right to make a donation under section 61.003. Id. The
Harvey court overruled the appellant's complaint and stated:

All of the case law touching on this issue stresses partiality as the result
of direct connections between juror and party that would be
extraordinarily difficult for a person of common intelligence and reason
to overcome. In this case, no such connection exists. . . . A juror may
deplore the crime underlying the action in which he or she has been
called on to serve, even donating to general funds designed to assist
complainants or that crime, and still be able to impartially weigh the
evidence presented as to a defendant's guilt or innocence and, if the
defendant is found guilty, fairly assess punishment.Id. at 633; see also Ruckman, 109 S.W.3d at 528 ("A defendant's entitlement to
impartial jurors on the question of whether he committed the crime charged is entirely
distinct from the question of whether the crime itself is one which arouses their moral
passion. A defendant is not entitled to demand a jury impartial to the underlying crime
itself.") (citing United States v. Johnson, 990 F.2d 1129, 1133 (9th Cir. 1993)).

 Here, appellant has failed to show that the form given to potential jurors to
inform them of the opportunity to donate their juror pay creates the kind of "direct
connection" between the jurors and a party or witness that deprives a defendant of an
impartial jury. Moreover, appellant does not indicate which jurors actually
participated in the program or how their participation biased them against appellant. (2) 
Appellant has failed to show that the jury who heard his case was biased because of
the provisions of section 61.003 and that section 61.003 was unconstitutional as
applied in his situation. See Harvey, 123 S.W.3d at 631-33. Because appellant has
failed to show that the statute was not unconstitutional as applied to him, appellant has
also failed to show that the statute is unconstitutional under all circumstances, and
therefore unconstitutional on its face. See Santikos, 836 S.W.2d at 633. We conclude
that the trial court did not abuse its discretion when it overruled appellant's motion for
new trial. 

 We overrule appellant's first issue.

Motion to Suppress 

 In his second issue, appellant argues that the trial court erred in denying his
motion to suppress evidence retrieved from his residence when the police made a
warrantless entry into his residence and later obtained a search warrant to retrieve
evidence identified during the initial warrantless search. 

 Standard of Review 

 We review the trial court's decision to deny appellant's motion to suppress
evidence under a bifurcated standard. Maxwell v. State, 73 S.W.3d 278, 281 (Tex.
Crim. App. 2002) (citing Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App.
2000)). The trial court is the sole trier of fact at a suppression hearing and thus
evaluates witnesses' testimony and credibility. Id.; Torres v. State, 182 S.W.3d 899,
902 (Tex. Crim. App. 2005). We must afford almost total deference to a trial court's
finding of historical fact as long as the finding is supported by the record. Herron v.
State, 86 S.W.3d 621, 627 (Tex. Crim. App. 2002). However we review de novo the
trial court's application of the law of search and seizure to the facts of the case.
Maxwell, 73 S.W.3d at 281; Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim. App.
2005). 

 Warrantless Entry

 The Fourth Amendment guarantees the right of individuals to be "secure in their
persons, houses, papers and effects against unreasonable searches and seizures." U.S
Const. amend. IV. A warrantless search by police is presumptively unreasonable. 
Gutierrez v. State, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007) (citing Payton v. New
York, 445 U.S. 573, 586, 100 S. Ct. 1371, 1380 (1980)). However, the warrant
requirement may be set aside when the State shows that exigent circumstances existed
at the time of the warrantless search. Id. The State bears the burden to prove that such
exigent circumstances existed through a two-step process. Id. First, the police must
have probable cause to enter or search a specific location. Id. In this context,
probable cause exists "when reasonably trustworthy facts and circumstances within
the knowledge of the officer on the scene would lead a man of reasonable prudence 
to believe that the instrumentality. . . or evidence of a crime will be found." Id.
(quoting Estada v. State, 154 S.W.3d 604, 609 (Tex. Crim. App. 2005)). Second, the
exigent circumstance must require the police to make an immediate warrantless entry
to a particular place. Id.

 Our jurisprudence recognizes three exigent circumstances that justify an
immediate warrantless entry by police officers. Id. The first exigent circumstance is
when the police must provide assistance to persons whom the police reasonably
believe are in need of assistance. Id. The second exigent circumstance is when the
police need to protect themselves from persons whom the police reasonably believe
to be present, armed, and dangerous. Id. The third exigent circumstance is when the
police attempt to prevent destruction of evidence or contraband. Id. 

 Here, the trial court found that the police could enter appellant's residence
without a search warrant because of exigent circumstances. Specifically, the trial
court found:

 9. The police heard banging and crashing in the house and feeling Juanita was
in immediate danger entered the house but neither the Defendant, nor Juanita
were located. 

 

 10. Almost simultaneously with the entry into the house, the police hearing
noise coming from the premises of 5320 P½, looked under the house to make
sure the Defendant was not breaking through the floor to escape and saw
Juanita Gonzalez' body laying [sic] in plain view. She was dead.


 The trial court's findings of exigency are supported by the record. The
complainant had last been seen alive in the company of appellant. Vargas had filed
a missing person's report that highlighted the violent personal relationship between
the complainant and appellant. The police were investigating the complainant's
disappearance at the time of the search based on information given by Vargas. The
complainant already had been missing for at least one day prior to the search. The
police also had a report that there was a suspected arson attempt at the home the
complainant shared with her sister on the day after the complainant's disappearance. 
The police officers on the scene perceived loud noises in appellant's residence after
announcing themselves to appellant. Detective McCullor testified that appellant
looked at the police through his window and then disappeared into the residence. At
that point, the police heard a loud noise and then entered the house. These facts would
give a person of reasonable prudence probable cause to believe that the complainant
was in need of emergency assistance. See Gutierrez, 221 S.W.3d at 685. 

 Appellant argues, however, that the police officers used the exigency as pretext
to conduct a "general exploratory search." See Arizona v. Hicks, 480 U.S. 321, 328,
107 S. Ct. 1149, 1154 (1987). Appellant argues that the police were aware that the
complainant was already dead because the complainant's body was in plain view
under appellant's residence and thus they knew that the complainant was no longer in
need of assistance. 

 Detective McCullor testified at the pre-trial hearing that the police were
unaware that the complainant's body was under appellant's residence until either
immediately prior to or during the initial warrantless entry. McCullor testified that,
after he announced his presence, he heard "rustling" inside appellant's residence "like
maybe something was being moved." He testified that the noises made him concerned
for the complainant's safety. McCullor also testified at the pre-trial hearing that he
and appellant "looked eye to eye" through the window adjacent to the door and that
appellant then escaped into the residence out of McCullor's line of vision. He again
announced his presence and told appellant to open the door for the police officers on
the scene. When appellant did not comply, McCullor testified that he "kicked
[appellant's] door in" and entered the residence. After a sweep of the house, no one
was located in appellant's residence. McCullor testified that the complainant's body
was observable from the street view of appellant's residence but that he never noticed
the body underneath appellant's residence during the period just prior to the
warrantless entry. 

 Officer Gonzales, a member of the police identification team, also testified at
the pre-trial hearing that the body was easily observable underneath appellant's
residence. However, Detective McCullor testified that the identification team was
called out to the scene at approximately 3:00 p.m., after appellant had been arrested
and the body had been discovered, and Officer Gonzales testified that he arrived on
the scene at approximately 3:30 p.m. 

 This Court must give almost total deference to the trial court's finding of fact
based on the trial court's evaluation of witness testimony and credibility as long as the
finding is supported by the record. Maxwell, 73 S.W.3d at 281; Herron, 86 S.W.3d at
627. The trial court apparently resolved any fact issue by finding that the police were
unaware that the complainant was already dead when the police made their warrantless
entry into appellant's residence. The trial court made a conclusion of law that the
police acted under an exigent circumstance after hearing banging and crashing in the
house and believing that the complainant was in need of immediate police aid and
assistance. We agree. We conclude that the State satisfied the first prong of the
exigent circumstances test. See Gutierrez, 221 S.W.3d at 686. Therefore, the State has
overcome the Fourth Amendment presumption that a warrantless search is
unreasonable. 

 

 Warrantless Search of the Complainant's Body

 The State has also satisfied the two-pronged "plain view" test when the
complainant's body was searched before the police obtained a search warrant. Walter,
28 S.W.3d at 541. The plain view doctrine is more than a mere exception to the
warrant requirement of the Fourth Amendment. Walter v. State, 28 S.W.3d 538, 541
(Tex. Crim. App. 2000) (citing Texas v. Brown, 460 U.S. 730, 738-39, 103 S. Ct.
1535, 1541(1983)). Because the article is already in plain view, neither its observation
nor its seizure would involve any invasion of privacy. Id. To satisfy the requirements
of a plain view analysis of obtained evidence, the police must meet two requirements. 
Id. First, the police must have a right to be in the location where the article is in plain
view. Id. Second, the article found in plain view is evidence which leads the police
to have the immediately apparent belief that the article may be evidence of a crime,
contraband, or otherwise subject to seizure. Id. (citing Horton v. California, 496 U.S.
128, 133, 110 S. Ct. 2301, 2306 (1990)). 

 Here, the trial court made a finding of fact that the police were engaged in an
investigation regarding the complainant's disappearance. Because we must give wide
deference to the trial court's finding of fact, we must rely on this finding because it is
supported by the record. Herron, 86 S.W.3d at 627. The State satisfies the first prong
of the plain view test because the police were engaged in a normal investigation and
had a right to enter appellant's yard and front steps to complete their investigation. 
Walter, 28 S.W.3d at 541. It is undisputed that the complainant's body was in plain
view from in front of appellant's residence. Because the complainant's body found
under appellant's residence was compelling evidence of a crime, the State satisfies the
second prong of the plain view test. Walter, 28 S.W.3d at 541.

 But the State did not need to rely on the Walter test to satisfy the plain view
requirements. Because the police had an exigent circumstance, the police could have
seized any evidence of a crime found in plain view during their emergency assistance. 
Laney v State, 117 S.W.3d 854, 862 (Tex. Crim. App. 2003). Such evidence
encompasses the complainant's body and any contraband found during the exigent
circumstance. Id. Therefore, appellant has failed to show that the trial court erred in
denying his motion to suppress evidence.

 We overrule appellant's second issue.

Legal Sufficiency


 In his third issue, appellant argues that the evidence presented at trial is legally
insufficient to support his conviction for murder. 

 Standard of Review

 To review the legal sufficiency of the evidence, we must view the evidence in
the light most favorable to the verdict and then determine whether a rational juror
could have found the essential elements of the offense beyond a reasonable doubt. 
Jackson v. Virginia, 443 U.S. 307, 320-21, 99 S. Ct. 2781, 2790 (1979); King v. State,
29 S.W.3d 556, 562 (Tex. Crim. App. 2000). 

 Analysis 

 A person commits murder when he intentionally or knowingly causes the death
of an individual. Tex. Penal Code Ann. § 19.02(b) (Vernon 2003). A jury may
make an inference of guilt from a defendant's flight from police. Clayton v. State, 235
S.W.3d 772, 780 (Tex. Crim. App. 2007). Evidence of a defendant's presence at the
crime scene may also support an inference that the defendant is culpable in the crime.
Id. at 779. Motive is never an element of a crime; however, motive may support an
inference of guilt. Id. at 781. 

 The State presented evidence that the police found the complainant's body,
together with appellant's work radio, underneath appellant's residence. The State also
presented evidence that appellant had a cartridge on his person consistent with the type
of bullet that caused the complainant's death. Joe Lopez, the complainant's supervisor
at the Galveston County Daily News, testified that appellant accompanied the
complainant on her paper route in the hours just prior to her disappearance. The State
produced a videotape that showed appellant and complainant together in the hours just
prior to the complainant's disappearance at a U.S. Coast Guard facility in a vehicle
owned by the complainant. The complainant's sister, Vargas, testified about the
violent relationship between appellant and the complainant. Vargas also testified that
the house she shared with the complainant was set on fire in a suspected arson in the
day following the complainant's disappearance. Detective McCullor testified that
appellant fled into his neighbor's adjoining unit when police announced their presence
and asked to speak with him. The State further showed that appellant climbed under
his neighbor's bed and refused to comply with police commands to surrender. This
evidence is legally sufficient to show that appellant caused the complainant's death. 
See Clayton, 235 S.W.3d at 779. 

 We overrule appellant's third issue.

Factual Sufficiency 

 In his fourth issue, appellant argues that the evidence presented at trial is
factually insufficient to support his conviction for murder. 

 Standard of Review

 Factual sufficiency analysis involves three basic ground rules. Lancon v. State, 
253 S.W.3d 699, 704 (Tex. Crim. App. 2008). First, we must recognize that a jury has
already passed on the facts and we must accord the jury the proper deference to avoid
substituting our judgment for that of the jury. Id. at 704-05 (citing Clewis v. State,
922 S.W.2d 126 (Tex. Crim. App. 1996)). Second, when we find the facts determined
by the jury to be insufficient to affirm a conviction, we must clearly lay out and
explain how the evidence supporting the verdict is too weak on its own, or how
contradicting evidence greatly outweighs evidence supporting the verdict. Id. at 705. 
Finally, we view all of the evidence in a neutral light when conducting this review. 
Id. We may only set aside a verdict when the evidence supporting the verdict is so
weak as to render the verdict clearly wrong or manifestly unjust. Id. (citing Cain v.
State, 958 S.W.2d 404, 406 (Tex. Crim. App. 1997)).

 Analysis 

 Appellant argues that the surveillance video taken at the Coast Guard facility
did not identify appellant as one of the figures in the video. Appellant argues that
Vargas and appellant's wife, Sheila Graves, failed to identify appellant as the figure
in the surveillance video. Sheila Graves testified under direct examination that
appellant was not the figure in the video.

 However, the State presented direct testimony from Vargas that positively
identified appellant as the figure in the video. Because this Court must give almost
complete deference to the jury's evaluation of the credibility of witness testimony, we
defer to the jury's apparent decision to find that Vargas' testimony was more credible
than Sheila Graves' testimony. Lancon, 253 S.W.3d at 704-05. 

 Appellant also argues that medical testimony that the complainant had been
beaten, sexually assaulted, strangled and then fatally shot was inconsistent with the
actions recorded on the surveillance video presented by the State. The State presented
the testimony of Galveston County Chief Medical Examiner Dr. Stephen Pustilnik,
who testified that the complainant died from a combination of strangulation and
multiple gunshot wounds. Dr. Pustilnik further testified that the complainant received
three gunshot wounds, with one fatal gunshot wound to the complainant's forehead. 
The State also presented expert testimony from Calvin Story, a ballistics expert from
the Texas Department of Public Safety. Story testified that he examined the bullets
extracted from the complainant's body, the cartridge taken from appellant at the time
of his arrest and a cartridge found at the Coast Guard facility several days after the
complainant's death. Story testified that all of the cartridges were consistent with the
.25-caliber automatic bullet found in the complainant's body.

 The State presented the Coast Guard surveillance video along with the
testimony of Coast Guard Chief Petty Officer Dennis James. James testified that he
was responsible for security and surveillance around the Coast Guard facility in
Galveston, Texas. On both direct and cross examination, James explained that the
camera only recorded images of objects that make motion directly in front of the
camera and then moves off those objects to complete a preprogrammed scan. 
Appellant argues that the video does not show that appellant battered, sexually
assaulted, stabbed or shot the complainant. In fact, the video only shows images of
appellant, the complainant, and the vehicle used by appellant. The record does not
reflect that appellant committed any violent offenses on the surveillance video. 
However, the State used this evidence merely to show the date and time that appellant
and complainant were seen together in appellant's vehicle during the hours prior to her
disappearance. 

 The State produced significant evidence to show that the complainant's body
was found underneath appellant's residence, appellant had a cartridge in his pocket
consistent with the type of bullet that caused the complainant's death, appellant had
a violent relationship with the complainant and the complainant died from multiple
gunshot wounds and strangulation. While none of this evidence was recorded on
video, the jury apparently resolved any inconsistencies in the evidence in favor of the
State. We must give due deference to the jury since the jury has already passed on
these facts Lancon, 253 S.W.3d at 704-05.

 Appellant next argues that the surveillance video time line is inconsistent with
the time of death given by the State's expert, Dr. Pustilnik. Dr. Pustilnik testified that
the complainant could have been dead at least 24 hours and up to 48 hours prior to the
discovery of the complainant's body on October 10, 2005 at approximately 3:00 p.m. 
The video shows images of appellant, the complainant, and the vehicle appellant used. 
The record does not reflect that appellant committed any violent acts against the
complainant while on camera. The jury apparently resolved the fact questions such
that the time of death could have included the hours after the recording up until 24
hours prior to the discovery of the complainant's body under appellant's residence. 
We must give due deference to the jury since the jury has already passed on these
facts. Id.

 This Court must give proper deference to the jury's decision such that we may
not overturn a jury's verdict unless the evidence is so weak as to make the verdict
clearly wrong or manifest unjust. Id. Given the amount and extent of the evidence
presented to the jury, we cannot conclude that the verdict is clearly wrong or
manifestly unjust.

 We overrule appellant's fourth issue. 








Conclusion

 We affirm the judgment of the trial court.

 


 Evelyn V. Keyes 

 Justice

 

 

Panel consists of Justices Taft, Keyes, and Alcala.

Do not publish. Tex. R. App. P. 47.2(b).
1. See Tex. Penal Code Ann. § 19.02(b) (Vernon 2003).
2. Appellant cites Valenzuela v. St. Paul Insurance Co., 878 S.W.2d 667, 670 (Tex.
App.--San Antonio 1994, no pet.) to support his argument. However, Valenzuela is
distinguishable from the current case. Valenzuela is a civil case that involves
allegedly inappropriate comments made by the district judge to potential jurors. Id. 
The present case is a criminal case that involves a handout given to potential jurors
in order to comply with a requirement of the Texas Government Code.