Jerry P. BROOK, Appellant,

v.

Bonnie L. BROOK, Appellee.

No. 13–92–144–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 31, 1993.

Rehearing Overruled Oct. 21, 1993.

Evelyn T. Ailts, Philips & Akers, Houston, for appellant.

Michael P. Von Blon, Houston, for appellee.

Before FEDERICO G. HINOJOSA, Jr., PAUL W. NYE,[1] and DORSEY, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

This is an appeal of a divorce case. Jerry Brook initially filed for divorce. Bonnie Brook subsequently filed a counterclaim requesting that the trial court appoint her as the sole managing conservator of their only child or that the trial court appoint her and her parents as joint managing conservators of the child. Bonnie's parents, the Behrmanns, intervened in the suit and also asked the trial court to appoint them as joint managing conservators of the child.[2] The trial court submitted the case to a jury on the single issue of conservatorship, and the jury found that Bonnie Brook and her parents should be appointed joint managing conservators of the child. The trial court subsequently entered a divorce decree appointing Bonnie Brook and the Behrmanns as joint managing conservators of the child. The trial court appointed Jerry Brook possessory conservator of the child, ordered him to pay child support, and ordered him to undergo psychological counseling.

By three points of error, Jerry Brook complains that the trial court abused its discretion by permitting undisclosed witness testimony, by refusing voir dire to determine an expert's qualifications, and by refusing charge requests. By four additional points of error, Jerry challenges the sufficiency of the evidence and complains that the evidence established his claim to conservatorship as a matter of law. By his last two points of error, Jerry complains that the trial court's conduct and comments resulted in an unfair

trial and that the trial court erred by ordering him to undergo psychological counseling. We affirm the trial court's judgment.

Jerry Brook and Bonnie Behrmann were married on May 28, 1983, and their child, Analyn Erin Brook, was born on October 22, 1983. Jerry worked during the day as a sales representative, and in 1985, Bonnie began working evenings and nights as a waitress, first in restaurants and later in nightclubs. After Bonnie began working, the couple began drinking alcoholic beverages and taking the drug "Ecstasy." The couple engaged in *menage à trois* and mate swapping, and Jerry owned many X-rated movies, subscribed to "Adam & Eve," a catalogue of sexual novelties, bought sex toys, and sent Bonnie sexually oriented cards. With Jerry's encouragement, Bonnie danced topless in amateur contests. Bonnie stopped attending church. In the early part of 1988, Bonnie underwent breast-enlargement surgery. On May 14, 1988, the couple celebrated Bonnie's birthday and went to a motel room, where she found a life-size inflatable doll and her "birthday gift," a man she knew, standing in the shower. The Brooks engaged in their last *menage à trois* that evening.

Bonnie left Jerry and their daughter on August 1, 1988. Analyn was four years old at the time. Bonnie began dancing professionally as a topless dancer at Rick's Cabaret and later at The Men's Club, and she frequently changed addresses over the next eighteen months. Jerry and Analyn moved in with the Behrmanns in December of 1988, and Mrs. Behrmann helped Jerry take care of Analyn. Sometime in June 1989, Jerry and Analyn moved into a townhome. Bonnie maintained contact with Analyn, taking her roller skating, enrolling her in gymnastics classes, and taking her to the zoo and to play in the park and on the beach. Jerry, however, exercised the primary caretaking duties of Analyn.

Jerry filed his petition for divorce on August 17, 1989. On January 9, 1990, the trial court entered temporary orders giving Jerry temporary custody of Analyn and requiring

---

1. Former Chief Justice, retired April 30, 1993.

2. Bonnie Brook and the Behrmanns were represented by the same counsel.

Bonnie to pay $100 per month in child support. Bonnie failed to meet this obligation, and Jerry began contempt proceedings against her on July 11, 1990. The trial court found that Bonnie had failed to timely pay the child support but was no longer in arrears. The trial court signed a contempt order on October 19, 1990, but suspended the sentence on condition that she timely pay child support.

In August 1990, the trial court appointed Virginia Leeland of the Harris County Family Court Services to investigate the child's situation. Ms. Leeland visited Jerry's home, visited Analyn's school and day-care center, and met appellees, Bonnie and the Behrmanns, at the Family Court Services offices. Ms. Leeland reported to the court on November 15, 1990. She concluded that Jerry should seek counseling to help him cope with anger toward Bonnie and to help him treat Analyn "in a more relaxed and age appropriate manner." She also found "Analyn's needs for continuity and stability would be best served by her remaining with her father." She found that Bonnie "may be on a stable track now," but that she had only recently settled in her parents' home, that she was financially and emotionally dependent on her parents, and that her credible future plans and situation did not sufficiently offset the previous instability in her life. Ms. Leeland characterized the sexual episodes this way:

> Much has been made of the sexual habits of the couple during their marriage. There seems to be no alternative but to view these episodes, which went on for close to a year, as something both individuals engaged in with consent at the time. It would be inappropriate to label one party as "perverse" and therefore a potential threat to the child without saying the same about the other.

Bonnie moved in with her parents in June 1990. She quit dancing topless and began a process to regain church membership. In December 1990, she filed a counterclaim for divorce and asked that the trial court appoint her and her parents joint managing conservators of Analyn. On February 14, 1991, the Behrmanns filed a plea in intervention, requesting that they and Bonnie be appointed joint managing conservators of Analyn. In March 1991, Bonnie went to a psychiatrist for counseling. Jerry never submitted to counseling. Bonnie amended her pleadings and requested that she either be appointed sole managing conservator of the child or that she and her parents be appointed joint managing conservators. Trial commenced on October 15, 1991, and the trial court signed the divorce decree on November 20, 1991.

By his first point of error, Jerry complains that the trial court abused its discretion by allowing testimony from an expert who was not disclosed during discovery.

■ A party who fails to respond to or supplement his response to a request for discovery shall not be entitled to present evidence which the party was under a duty to provide in a response or supplemental response or to offer the testimony of an expert witness or of any other person having knowledge of discoverable matter, unless the trial court finds that good cause, sufficient to require admission, exists. TEX.R.CIV.P. 215(5). A party has a duty to supplement discovery responses to identify undisclosed expert witnesses or undisclosed subject matter to which an expert witness will testify as soon as is practicable, but not less than 30 days before trial, except on leave of court. TEX. R.CIV.P. 166b(6)(b). One need not fail to identify the expert to invoke Rule 215(5); failure to disclose the subject of the expert's testimony will also invoke the sanction of Rule 215(5). *Remington Arms Co. v. Caldwell,* 850 S.W.2d 167, 170 (Tex.1993). The opportunity to fully depose the identified witness does not provide the good cause necessary to allow the trial court to admit that witness's testimony on undisclosed subjects. *Sharp v. Broadway Nat'l Bank,* 784 S.W.2d 669, 671 (Tex.1990). The trial court has discretion to determine whether the party proffering the evidence has met the burden of establishing good cause to require admission. *Alvarado v. Farah Mfg. Co.,* 830 S.W.2d 911, 914 (Tex.1992).

■ To preserve error, a party must present to the trial court a timely request, objec-

tion, or motion stating the specific grounds for the ruling he desires the trial court to make. Tex.R.App.P. 52(a). Failure to obtain a pretrial ruling on discovery disputes that exist before commencement of trial constitutes a waiver of any claim for sanctions based on that conduct. *Remington Arms Co.*, 850 S.W.2d at 170. However, if pretrial discovery abuse is not revealed until after the trial begins, a party has not waived his claims by failing to object before the abuse is revealed at trial. *Id.*

■ The record before us indicates that Jerry served interrogatories on Bonnie in February 1990, but does not reflect that Jerry served any interrogatories on the Behrmanns. In February 1990, Jerry served the following interrogatory on Bonnie:

> State the names, addresses, and telephone numbers of any expert(s) who may be called as a witness (including ... mental health providers), the subject matter on which the expert is expected to testify, the mental impressions and opinions held by the expert, and the facts, impressions, and opinions held by the expert, and the facts known to the expert (regardless of when the factual information was acquired) which relate to or form the basis of the mental impressions and opinions held by the expert.

One year later, in February 1991, Bonnie responded with the following answer:

> Dr. Perez will testify generally to the emotional, mental and psychological condition of Bonnie Brook; the causation for Bonnie Brook's present mental health status; treatment received and prognosis. The factual basis for his opinions is unknown at the present time.

On October 8, 1991, Bonnie supplemented her answer as follows:

> [Dr. Perez w]ill testify regarding Bonnie Brook being a passive individual that desires to please others. Dr. Perez believes that Jerry Brook had a significant influence on Bonnie Brook during the marriage, resulting in conduct changes of Bonnie Brook.
>
> These mental impressions are based upon consultation, evaluation and testing of Bon-

nie Brook, and review of various documents such [sic] MMPI and Dr. Fason's report.

> Dr. Perez is in the process of preparing a written report regarding the above and will forward to Petitioner's attorney upon our receipt.

Appellees, Bonnie Brook and the Behrmanns, produced Dr. Perez and asked him, "What do those test results reveal to you, as far as—of any significance, as far as how Bonnie is—how Bonnie got involved in those types—." Jerry objected that Dr. Perez's report was not in evidence and had not been produced in timely response to discovery requests and that he should not be allowed to testify concerning its results. Jerry then indicated that Dr. Perez could testify about Bonnie Brook, but only if he did not rely on the report. Jerry further objected and asked that Dr. Perez not be allowed to testify about "mental impressions, evaluations or anything else about Jerry Brook or Analyn Brook." The trial court noted that the report had not been offered into evidence and overruled all objections to Dr. Perez's testimony.

Dr. Perez gave opinion testimony concerning 1) the psychological impact of a child's statements about the number of playmates she has at each parent's home, 2) who would best serve Analyn's interest as custodial parent, 3) Jerry's failure to seek therapy, and 4) Jerry's lifestyle and fitness as a custodial parent. Dr. Perez's testimony ended with the following statement:

> My opinion is that remaining in that environment, in my judgment, with the history of sexual abuse that has been present will be detrimental to Analyn physically.
>
> \* \* \* \* \* \*
>
> My opinion is that it will affect her emotional development and it is actually corroborated by the MMPI findings of Dr. Fason that indicates that children typically of parents like Mr. Brook end up receiving psychotherapy.

■ Bonnie did not designate Dr. Perez as an expert who would testify concerning Analyn's welfare or Jerry's lifestyle, therapeutic history, or fitness as a parent. Ordinarily, a

party who fails to respond or supplement responses to discovery requests is precluded from offering testimony of undisclosed witnesses without showing good cause for allowing the testimony. However, as we have previously noted, the record does not reflect that Jerry served any interrogatories on the intervenors, Mr. & Mrs. Behrmann.

■ Any party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party. TEX.R.CIV.P. 60. Once a plea in intervention is filed, the intervenor becomes a party for all purposes unless the trial court strikes the intervention. *Wilson v. Wilson,* 601 S.W.2d 104, 105 (Tex.Civ.App.—Dallas 1980, no writ).

Our research has found no cases holding that one party may not offer the testimony of a witness that another party failed to disclose during discovery. Since Jerry did not serve any interrogatories on the Behrmanns, we hold that the Behrmanns could offer the testimony of any witness, including Dr. Perez.[3] The trial court did not abuse its discretion by allowing Dr. Perez to testify concerning mental impressions and opinions he formed regarding Jerry Brook. We overrule appellant's first point of error.

■ By his second point of error, Jerry complains that the trial court abused its discretion by denying him the right to examine Dr. Perez's qualifications on voir dire.

■ The trial court determines whether an expert is competent to testify, and we uphold a trial court's ruling absent a clear abuse of discretion. *Celotex Corp. v. Tate,* 797 S.W.2d 197, 201 (Tex.App.—Corpus Christi 1990, no writ); *Trailways, Inc. v. Clark,* 794 S.W.2d 479, 483 (Tex.App.—Corpus Christi 1990, writ denied). While the Rules of Criminal Evidence require a party, against whom an opinion is being offered, be given the opportunity to conduct a voir dire examination, the Rules of Civil Evidence have no such provision. *Compare* TEX.R.CIV.

EVID. 705 *with* TEX.R.CRIM.EVID. 705(b). The trial court afforded Jerry the opportunity to test the witness's qualifications on cross-examination. The trial court did not abuse its discretion by denying his request to examine the witness on voir dire. We overrule appellant's second point of error.

■ By his third point of error, Jerry complains that the trial court abused its discretion by not instructing the jury that it had to find that it was against the child's best interest to appoint the parents as managing conservators, before it could decide in favor of the Behrmanns. By his fourth point of error, Jerry complains that the evidence was insufficient to support the jury's finding in favor of the Behrmanns. By his fifth point of error, Jerry complains that the trial court erred by denying his motion for directed verdict on the issue of the Behrmanns' conservatorship.

■ A parent shall be appointed sole managing conservator or both parents shall be appointed joint managing conservators of the child unless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development. TEX.FAM.CODE ANN. § 14.01(b)(1) (Vernon Supp.1993). The Fort Worth Court of Appeals has construed this statute as allowing the appointment of a parent as a joint managing conservator with a non-parent without a finding that joint managing conservatorship in both parents and sole managing conservatorship in either parent would significantly impair the child's health or development. *Connors v. Connors,* 796 S.W.2d 233, 239 (Tex.App.—Fort Worth 1990, writ denied). We agree with this construction.

The jury was asked whether it found sole managing conservatorship in Jerry, sole managing conservatorship in Bonnie, or joint managing conservatorship in Bonnie and the

---

3. Appellant continually refers to "respondents" in his brief when discussing Bonnie Brook's responses to discovery. Appellant misstates the record before us. The record includes interrogatories served upon "BONNIE L. BROOK, by and through her attorney of record." The record also contains numerous responses made by "Respondent, BONNIE L. BROOK." The record does not contain any interrogatories served on the Behrmanns and does not contain any responses made by the Behrmanns.

Behrmanns to be in Analyn's best interest. We hold that Jerry was not entitled to the requested instruction, and the jury need not have made any special findings to authorize the trial court to appoint a child's parent and grandparents joint managing conservators. We overrule appellant's third, fourth, and fifth points of error.

By his sixth point of error, Jerry complains that the evidence established as a matter of law that the child's best interest would be served by appointing him as sole managing conservator. By his seventh point of error, he complains that the jury's finding was against the great weight and preponderance of the evidence.

 The evidence introduced at trial showed that Jerry was a strict disciplinarian, that he needed counseling to learn how to better deal with children in an age-appropriate fashion, and that he needed counseling to cope with anger towards Bonnie. The evidence also showed that Jerry did not have good relations with other members of his family and that he provided a home in a complex without other children with whom Analyn might play and without play areas for children. He admitted to previous drug use and the rather untraditional sexual practices the couple engaged in. Finally, there was extensive testimony that Jerry treated Bonnie in a fashion to degrade her, to encourage and coerce her into performing sexual acts that she did not otherwise wish to perform, and that he attempted to intercept and prevent communications between Bonnie and her parents. One expert testified that Jerry would deter Analyn's emotional and physical development. Such evidence does not allow for a determination as a matter of law that the child's best interest would be served by appointing such a parent sole managing conservator. We overrule appellant's sixth point of error.

 When we review a factual sufficiency point or a great weight and preponderance point, we look at all the evidence and follow the test set forth in *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986). The evidence adduced at trial is partially summarized in the statement of facts. The parties provided conflicting testimony concerning the amount of primary care they gave Analyn. The Behrmanns testified that Mrs. Behrmann gave primary care to Analyn while she lived at their house, but Jerry testified that he provided primary care during that period. It is undisputed that Analyn lived with Jerry since the separation, that he provided primary care when he and Analyn were not living with the Behrmanns, and that Bonnie did not provide primary care after the separation. The evidence showed that Jerry was more likely to discipline Analyn and that Bonnie was more likely to indulge her, but the parties disputed the degrees of discipline and indulgence and their effect on Analyn.

Regarding the issues of the couple's sexual conduct and drug use, Jerry presented evidence that Bonnie initiated the conduct, enjoyed it, and continued using drugs and dancing topless after the separation. He produced evidence that she obtained breast enlargement surgery without his consent or knowledge and that he objected to her dancing topless. Appellees presented testimony that Bonnie was an unwilling participant in video rentals and group viewing, mate swapping, and *menage à trois*. Bonnie testified that she felt uncomfortable with the sex acts and that Jerry treated her roughly during sex and caused her low self-esteem. The evidence included sexually suggestive cards sent by each party; cards from Jerry to Bonnie, and a card from Bonnie to their friends.

The psychological reports of Jerry, Bonnie, and the Behrmanns were introduced. The court-appointed psychiatrist, Dr. Fason, testified that Jerry offered Analyn better judgment, better discipline, and more stability in the home life. Dr. Fason and Virginia Leeland both testified that the fact that Jerry served as primary caretaker for the three years preceding trial was a significant factor in their decisions. Dr. Fason testified that Bonnie had severe self-esteem problems that could occur in Analyn. He found Mr. Behrmann to be contradictory, argumentative, self-righteous, and pious. It was Dr. Fason's opinion that Mr. Behrmann was the likely cause of Bonnie's emotional problems. The evidence showed that Bonnie was under-

going therapy, but that Jerry was not, even though all experts thought he should.

Given the contradictory evidence concerning the parents' respective roles in their previous behavior, the battle between the experts concerning the parent more likely to deter the child's development, and the manner in which the court-appointed investigator qualified her opinion that she preferred Jerry over Bonnie, we cannot say that the jury's finding is against the great weight and preponderance of the evidence. We overrule appellant's seventh point of error.

■ By his eighth point of error, Jerry complains that the trial court's conduct and comments during the trial equated to a comment on the weight of the evidence and resulted in a materially unfair trial.

■ To reverse a judgment on the ground of judicial misconduct, we must find judicial impropriety coupled with probable prejudice to the complaining party. *Silcott v. Oglesby,* 721 S.W.2d 290, 293 (Tex.1986); *see also* TEX.R.APP.P. 81(b)(1). The trial judge is responsible for the general conduct of the trial, and we allow him discretion in expressing himself while he controls the trial, even though he should refrain from verbally confronting or displaying displeasure towards counsel. *Food Source, Inc. v. Zurich Ins. Co.,* 751 S.W.2d 596, 600 (Tex.App.— Dallas 1988, writ denied). However, a judge's comments might become so prejudicial and biased that a party is denied a fair trial. *Shaw v. Greater Houston Transp. Co.,* 791 S.W.2d 204, 211 (Tex.App.—Corpus Christi 1990, no writ). We examine the record as a whole to determine whether the trial court's impropriety harmed appellant. *Brown v. Russell,* 703 S.W.2d 843, 847 (Tex. App.—Fort Worth 1986, no writ).

Jerry offers a series of comments that the trial judge made while ruling on objections and requests as indicating prejudice; however, he does not show how any of the remarks which allegedly show bias would have prejudiced his case before the trier of fact. For example, the comments "I can't hear you when you sit," "No remarks are necessary," or "I don't need a court reporter, you might" have no reference to issues in the case and are not likely to prejudice the factfinder. Other comments, *e.g.,* "I wouldn't think you would be [certain of what your question is]," took place outside the presence of the jury.

Jerry also argues that the trial judge sustained 7/8ths of appellees' trial objections while overruling 4/5ths of his objections. He has not demonstrated that any of these rulings were erroneous. Finally, Jerry has not shown any probable prejudice from comments the judge made while ruling on objections to repetitious inquiries and testimony. We overrule appellant's eighth point of error.

■ By his ninth point of error, Jerry complains that the trial court erred by requiring him to undergo psychological counseling indefinitely. He argues that the order is vague, indefinite, and outside the scope of the pleadings.

The trial court may, if it finds that it is in the best interest of the child because of a history of conflicts and difficulties in resolving the issue of conservatorship, order any party to participate in counseling with persons appointed or approved by the court for purposes of facilitating compliance with the order. TEX.FAM.CODE ANN. § 14.03(h) (Vernon Supp.1993). The trial court did not err by ordering Jerry to undergo counseling.

The trial court has not attempted to enforce the order. If, as Jerry argues, the order cannot be enforced by contempt, it may be clarified. *See* TEX.FAM.CODE ANN. § 11.22(a) (Vernon Supp.1993). We overrule appellant's ninth point of error.

We AFFIRM the trial court's judgment.

PAUL W. NYE, former C.J., not participating.