NO. 07-04-0103-CR


NO. 07-04-0117-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



SEPTEMBER 22, 2005



______________________________




RICHARD ALLEN CLICK, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 47TH DISTRICT COURT OF ARMSTRONG COUNTY;



NOS. 1016 & 1017; HONORABLE HAL MINER, JUDGE



_______________________________



Before REAVIS and CAMPBELL and HANCOCK, JJ.

MEMORANDUM OPINION


 Following pleas of not guilty, appellant Richard Allen Click was convicted by a jury
of sexual assault of a child in cause numbers 1016 and 1017. Punishment was assessed
at cumulative sentences of 20 years confinement. Presenting two points of error, appellant
questions whether (1) service of the indictment by a uniformed sheriff's deputy in the
presence of the venire panel subverted his presumption of innocence, and (2) pursuant to
article 38.072 of the Texas Code of Criminal Procedure, outcry statements of the alleged
victims were proper. We affirm.

 Only a brief recitation of the facts is necessary as there is no challenge to the
sufficiency of the evidence to support appellant's conviction. Appellant is the biological
father of victims A.C. and B.C. When B.C. was 14 years old, she confided incidents of
sexual molestation committed by appellant against her to Jacqueline Huntington, a friend. 
At age 16, A.C. also told Jacqueline of acts of sexual abuse performed on her by appellant,
including sexual intercourse. 

 By his first point, appellant maintains he was deprived of the right to a fair trial
because the presumption of innocence was subverted when he was served with the
indictment by an armed and uniformed deputy sheriff in the presence of the venire panel. 
We disagree. 

 By supplemental brief the State withdraws its assertion raised in its original brief that
the record does not support service of the indictments in the presence of the venire panel
and concedes appellant was served by a uniformed deputy sheriff in the presence of the
venire panel. However, the State holds firm to its original contention that appellant's
complaint is not preserved for review.

 Appellant acknowledges he found no cases in support of his argument. However,
relying on Randle v. State, 826 S.W.2d 943, 946 (Tex.Cr.App. 1992), and Scott v. State, 80
S.W.3d 306, 308-09 (Tex.App.-Fort Worth 2002, no pet.), he analogizes his complaint to
cases where the presumption of innocence was impaired when a defendant appeared for
trial in jail apparel. He argues that any indicia of guilt subverts the presumption of
innocence. He further argues that impingement on his presumption of innocence is error
of constitutional magnitude that requires review for harm under Rule 44.2(a) of the Texas
Rules of Appellate Procedure. 

 As a prerequisite for appellate review, a defendant must make a timely request,
objection, or motion stating the grounds with sufficient specificity to apprise the trial court of
the complaint and obtain an adverse ruling. See Tex. R. App. P. 33.1(a). See also Martinez
v. State, 91 S.W.3d 331, 337 (Tex.Cr.App. 2002) (discussing application of the "raise-it-or-waive-it" forfeiture rule). Additionally, the objection at trial must comport with the complaint
on appeal. Trevino v. State, 991 S.W.2d 849 S.W.2d 854-55 (Tex.Cr.App. 1999); Goff v.
State, 931 S.W.2d 537, 551 (Tex.Cr.App. 1996), cert. denied, 520 U.S. 1171, 117 S.Ct.
1438, 137 L.Ed.2d 545 (1997). 

 The defendants in the cases relied on by appellant preserved their complaints for
review. In Randle, counsel objected to his client being placed before the jury in jail clothes,
and in Scott, a motion for continuance was presented requesting additional time to secure
appropriate clothing. Both courts found the presumption of innocence had been subverted
by requiring the defendants to proceed to trial in jail-issued garb.

 In the instant case, the record reflects that after dispensing with pretrial motions and
shortly before beginning voir dire, defense counsel announced to the trial court:

 [t]he sheriff just served my client with a copy of the indictment, and there is a
statutory period of presentation required, prior service of an indictment before
you go to trial. And what I'm showing you, Judge, what I have just been
served is a precept to serve copy of indictment . . . .


A brief discussion ensued on whether service of the indictment had been waived because
it had not been raised during pretrial hearings. Counsel objected to any prior hearings on
the ground he was not representing appellant at that time. No objection, however, was
raised on impingement of appellant's presumption of innocence. We conclude appellant's
complaint was not preserved for appellate review. (1) Point of error one is overruled. 

 By his second point of error, appellant contends the use of hearsay statements of the
child victims by outcry witness Jacqueline Huntington was improper under article 38.072 of
the Texas Code of Criminal Procedure Annotated (Vernon 2005). Section 1 of article 38.072
provides for application of the article to a proceeding in the prosecution of an offense under
certain provisions of the Penal Code if committed against a child 12 years of age or younger. 
Specifically, appellant asserts the victims were above age 12 at the time of the charged
offenses making article 38.072 inapplicable. We agree the statute was not implicated, but
for the following reasons, overrule appellant's contention. 

 A.C. testified that when she was 11 or 12 years old, appellant began molesting her
by rubbing her private parts and digital penetration. At age 13, the abuse escalated to
biweekly sexual intercourse until she was 16. Appellant was indicted in cause number 1016
for intentionally and knowingly causing penetration by his sexual organ of A.C.'s sexual
organ. He was not, however, indicted for acts of indecency with her or penetration by his
finger when she was 12 years of age or younger.

 B.C.'s testimony reflects that when she was ten or 11 years old, appellant began
touching her inappropriately and would frequently ask if he could see whether her breasts
were developing and whether he could feel her vaginal area for pubic hair growth. She
began to fear appellant and refused his advances. When she was 14 and refused to
cooperate, appellant threw her down on her bed with enough force to break it, secured her
hands over her head with one of his hands, and with his free hand pulled her shorts and
underwear down and inserted his finger into her vagina. He was indicted in cause number
1017 for intentionally or knowingly causing penetration of B.C.'s sexual organ by means of
his finger, but was not indicted for indecency with her for incidents that occurred when she
was 12 years old or younger.

 Both victims confided the acts of sexual abuse to Jacqueline Huntington and she was
designated as an outcry witness under article 38.072. An outcry witness is the first adult to
whom the child victim makes a statement about the offense. See Tex. Code Crim. Proc.
Ann. art. 38.072, § 2(a)(2). An outcry statement is an exception to the hearsay rule of
exclusion. Dorado v. State, 843 S.W.2d 37, 38 (Tex.Cr.App. 1992) (en banc). 

 Article 38.072 applies to prosecutions of certain offenses committed against a child
12 years old or younger. The victim's age when the offense is committed triggers whether
the statute will apply, not the victim's age at the time the outcry statement is made. See
Harvey v. State, 123 S.W.3d 623, 627-29 (Tex.App.-Texarkana 2003, pet. ref'd). The
evidence is uncontradicted that the charged offenses in the underlying cases occurred when
both victims were older than 12. Thus, we conclude article 38.072 does not apply and
Jacqueline's testimony was not admissible as outcry evidence. (2) 

 The State contends appellant waived his complaint. When Jacqueline was testifying
defense counsel lodged the following objection, "Your, Honor, I'm going to object at this
point unless this witness has been identified as the outcry witness. This is a hearsay
statement." Appellant's complaint on appeal is improper application of article 38.072 due
to the victims' ages. We agree the complaints are not similar, but a general hearsay
objection is sufficient to preserve a complaint that proffered outcry statements are
inadmissible hearsay. See Lankston v. State, 827 S.W.2d 907, 910-11 (Tex.Cr.App. 1992);
Mosley v. State, 960 S.W.2d 200, 203 (Tex.App.-Corpus Christi 1997, no pet.). 

 The State suggests by footnote that the victims' hearsay statements may have been
admissible under Rule 803(24) of the Texas Rules of Evidence as statements against
[social] interest. We acknowledge that a trial court's ruling on admissibility of evidence will
be sustained if it is correct on any theory of law even if the wrong reason is given; Harvey,
123 S.W.3d at 630; however; a less burdensome analysis is to resolve appellant's complaint
by conducting a harm analysis on improper admission of the statements. 

 Improper admission of hearsay evidence is non-constitutional error reviewed for harm
under Rule 44.2(b) of the Texas Rules of Appellate Procedure. Johnson v. State, 967
S.W.2d 410, 417 (Tex.Cr.App. 1998). See also Dunn v. State, 125 S.W.3d 610, 614-15
(Tex.App.-Texarkana 2003, no pet.). We disregard the error as harmless if it does not affect
appellant's substantial rights.  See Tex. R. Evid. 103(a). Error in admission of improper
outcry statements is harmless when other properly admitted evidence establishes the same
facts. Brooks v. State, 990 S.W.2d 278, 287 (Tex.Cr.App. 1999), cert. denied, 528 U.S. 956,
120 S.Ct. 384, 145 L.Ed.2d 300 (1999); Thomas v. State, 1 S.W.3d 138, 142
(Tex.App.-Texarkana 1999, pet. ref'd). 

 Jacqueline's testimony concerning the victims' statements was vague regarding the
specific acts of sexual abuse. It established how the abuse surfaced when A.C. realized
appellant might be committing acts against her younger sister, B.C. A.C. recounted the
abuse she suffered to B.C., which caused her to become extremely upset. B.C. went to the
diner where Jacqueline worked and confided that appellant had touched her private parts
inappropriately. Jacqueline telephoned A.C. to come to the diner and discuss the matter. 
After more details were disclosed, Jacqueline called the victims' mother and the sheriff. 

 More explicit facts were testified to by A.C. and B.C. than those offered by
Jacqueline. A.C. testified that appellant began molesting her by rubbing her arms, stomach,
and private parts both over and under her clothes. He also penetrated her with his finger. 
When she was 13 he began rubbing her and then said he wanted to try something else that
would not hurt her. He pulled her pants and underwear down and laid on top of her and had
sexual intercourse with her. She testified she was scared and that appellant required her
to have sex with him as a condition of being allowed to see her boyfriend.

 B.C. testified she began to fear appellant when she was in the fourth grade. He
would repeatedly ask to see her breasts and check for pubic hair growth. He heeded her
refusals until she was 14 when he threw her down on her bed and forcibly penetrated her
with his finger. Given the testimony of A.C. and B.C., Jacqueline's testimony is rendered
harmless. Point of error two is overruled. 

 Accordingly, the judgments of the trial court are affirmed.

 Don H. Reavis

 Justice


Do not publish.







 
1. Service of an indictment is not evidence of guilt. See Tex. Code Crim. Proc. Ann.
art. 38.03 (Vernon Supp. 2004-05). See also Harris v. State, 475 S.W.2d 922, 924
(Tex.Cr.App. 1972).
2. Our conclusion pretermits a discussion of appellant's complaint that he was denied
a reliability hearing under section 2(b)(2) of the statute. Moreover, appellant did not object
to the trial court's failure to conduct a reliability hearing, which is a prerequisite for appellate
review. Diaz v. State, 125 S.W.3d 739, 743 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd).



 Ruston suffered from recurrent experiences, or episodes, of depressive
behavior and anxiety accompanied by an ongoing struggle with abstinence from chemical
dependency. Davis concluded that Ruston’s bipolar disorder and drug dependence could
interfere with his interaction with C.H.S. Although Ruston was engaged in a program of
self help, individual therapy, and medical intervention, Davis opined there could be a
problem if he did not maintain stability in his behavior and treatment program. 
          After his initial assessment, Davis referred Ruston to Randolph for individual therapy
and Patel for medication management. Davis believed a continuing relationship between
Ruston and his medical providers was important in terms of Ruston’s visitations with C.H.S.
because of Ruston’s problematic interactions with Holly, his desire to see C.H.S., and his
report of failed treatment for substance abuse and discontinuance of his medication for his
bipolar condition. He recommended Ruston continue interaction with Patel and Randolph
until he and his doctors concurrently agreed that Ruston no longer needed medication
and/or individual therapy. 
          At trial, Randolph testified Ruston initially started individual psychotherapy for his
bipolar disorder in January 2003. However, in December 2003, Ruston terminated his
therapy with Randolph until Davis referred him in May 2007. Randolph indicated that,
since Davis’s referral, Ruston had been regularly attending AA meetings at least four times
a week as well as pursuing a spiritually-based treatment. He further testified Ruston was
compliant with his psychotherapy and actively participating in cultural, charitable, and
religious organizations. Randolph considered Ruston’s vocational success managing a
brokerage firm as a strong indicator of the success of his treatment. As a result of
Ruston’s progress, their sessions became less frequent. Randolph opined his therapy
sessions were no longer necessary.
          Patel testified he first saw Ruston following his December 2005 relapse. At that
time, Ruston was struggling with symptoms of severe depression and anxiety. His initial
diagnosis was bipolar disorder–type one, generalized anxiety disorder and substance
abuse. In his opinion, Ruston was always going to have his symptoms which would
reappear if he ceased medicating and there would always be a concern he would use
drugs again. He described Ruston’s illness as life-long. 
          Holly, a pediatrician, testified that, while they were dating, Ruston hid his drug
dependence problem and diagnosis of bipolar disorder. The month after their wedding, the
couple sought marital counseling after Ruston yelled at her concerning money matters,
called her obscene names, and began throwing things in the house. After Ruston started
seeing Patel and reestablished a medication regimen for his bipolar disorder, his mood
became more stable; however, Holly remained concerned. She began counting his
medicine and determined there were times when he was not taking his medication. Holly
testified Ruston indicated he didn’t think he needed his medication and that these
pronouncements were usually followed by mood swings, agitation, distraction,
destructibility, and pressured speech. 
          During the divorce proceedings, Holly sought a court order that would monitor
Ruston’s compliance with his treatment for his bipolar disorder and substance abuse to
assure C.H.S. would be going to a safe environment on visitations. Determining whether
Ruston was compliant with his medication and treatment was paramount to Holly.
          Ruston, a vice-president and general manager of operations of a food brokerage, 
 testified he discontinued his treatment in December 2003 because, at the time, he did not
want to accept his diagnosis. Ruston could not explain why he relapsed in December
2005. He testified that since he started seeing Patel he had followed his prescription drug
program with the exception of a period of time following surgery when he ceased taking his
medication due to doctors’ orders. He also acknowledged that he had a substance abuse
problem and was bipolar. 
          On May 29, 2008, the trial court signed a Decree of Divorce dissolving the marriage
between Ruston and Holly. The decree appointed Ruston and Holly as joint managing
conservators of C.H.S., with Holly having the right to establish the child’s primary
residence. The decree also contained provisions pertaining to counseling for Ruston


 and
Ruston’s possession of and access to the child. 
                                                            Discussion
          Ruston asserts that the decree’s provisions governing his possession of and access
to C.H.S. between the ages of three and five are invalid because the imposition of a limited
possession schedule is unsupported by the record.


 He next asserts the trial court
exceeded its authority by (1) requiring him to continue taking medications prescribed for
his bipolar disorder, (2) requiring him to continue counseling with a mental health
professional, (3) requiring him to continue to attend Alcoholics Anonymous or Narcotics
Anonymous weekly, and (4) requiring a mental health professional to submit a written
report every six months.
          Holly asserts the record contains adequate evidence to support the modified order
of possession and access. She also asserts the trial court did not exceed its authority by
requiring Ruston to “continue” therapy, medication, and periodic reporting that was in place
during the divorce proceedings. 
          I.        Standard of Review
          A trial court has broad discretion to fashion the terms of a decree related to custody,
visitation, and possession; see In re Doe 2, 19 S.W.3d 278, 281 (Tex. 2000); Gillespie v.
Gillespie, 644 S.W.2d 449, 451 (Tex. 1982), and may be reversed only if it appears that
the court abused its discretion in light of the record as a whole. Id. A trial court abuses its
discretion when it acts arbitrarily or unreasonably, without reference to any guiding rules
or principles. Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990). See In Interest of
Doe, 917 S.W.2d 139, 141 (Tex.App.–Amarillo 1996, writ denied). Furthermore, we may
not reverse the trial court’s judgment simply because we disagree with the outcome. 
Rather, we must conclude that the decision lacked basis in fact or law or involved a
misapplication of fact to law. In re C.R.T., 61 S.W.3d 62, 65 (Tex.App.–Amarillo 2001, pet.
denied). 
          Under the abuse of discretion standard, legal and factual insufficiency are not
independent grounds of error, “but are relevant factors in assessing whether the trial court
abused its discretion.” Ditraglia v. Romano, 33 S.W.3d 886, 889 (Tex.App.–Austin 2000,
no pet.) (quoting Doyle v. Doyle, 955 S.W.2d 478, 479 (Tex.App.–Austin 1997, no pet.). 
Further, there is no abuse of discretion where the record contains some evidence of a
substantive and probative character in support of the trial court’s decision. Baltzer v.
Medina, 240 S.W.3d 469, 475 (Tex.App.–Houston [14th Dist.] 2007, no pet.). 
          II.       Conservatorship – Possession and Access
                     A.       Statutory Scheme
          In matters of conservatorship, the public policy of this State is to assure continuing
contact between children and parents who have established the ability to act in their child’s
best interest, provide a safe, stable, and nonviolent environment for the child and
encourage parents to share in their child’s development after separation or divorce. Tex.
Fam. Code Ann. § 153.001 (Vernon 2008).


 When determining issues related to
conservatorship or possession of and access to the child, the best interest of the child is
the primary consideration. § 153.002. See In re M.S., 115 S.W.3d 534, 547 (Tex. 2003). 
          If, as here, both parents are appointed as the child’s conservators, the trial court
specifies the rights and duties that are to be exercised by the parents. § 153.071. While
the guidelines established in the standard possession order are intended to guide courts
as to the minimum possession for a joint managing conservator; § 153.251(a), there is a
rebuttable presumption that the standard possession order provides the reasonable
minimum possession of a child for a parent named as a joint managing conservator; §
153.252(1), and that the order is in the child’s best interest. § 153.252(1) & (2). 
          If there is sufficient evidence to rebut this presumption, however, the trial court may
deviate from the standard possession order. § 153.256. See Niskar v. Niskar, 136 S.W.3d
749, 756 (Tex.App.–Dallas 2004, no pet.). When deviating from the standard possession
order, the trial court may consider: (1) the age, developmental status, circumstances,
needs, and the best interest of the child; (2) the circumstances of the managing
conservator and of the parent named as a possessory conservator; and (3) any other
relevant factor. § 153.256. Further, a reviewing court’s holding that a trial court did not
abuse its discretion implies that the evidence contained in the record rebutted the
presumption that the standard possession order was reasonable and in the child’s best
interest. See Gray v. Gray, 971 S.W.2d 212, 216 n.2 (Tex.App.–Beaumont 1998, no pet.)
(citing In Interest of Doe, 917 S.W.2d 139 (Tex.App.–Amarillo 1996, pet. denied)). 
                     B.       Standard Possession Order–Best Interest of The Child
          In determining the issues of conservatorship and possession of a child, the trial
court is given wide latitude in determining the best interest of the child and will be reversed
only for an abuse of discretion. In re C.R.T., 61 S.W.3d at 65 (citing Gillespie v. Gillespie,
644 S.W.2d 449, 451 (Tex. 1982). This is, in part, because the trial court is in a better
position having “faced the parties and their witnesses, observed their demeanor, and had
the opportunity to evaluate the claims made by each parent.” Coleman v. Coleman, 109
S.W.3d 108, 111 (Tex.App.–Austin 2003, no pet.) (citing Martinez v. Molinar, 953 S.W.2d
399, 403 (Tex.App.–El Paso 1997, no writ)). Thus, when the testimony of witnesses is
conflicting, this Court will not disturb the credibility determinations made by the trial court
or jury and we will presume that the factfinder resolved any conflict in favor of the verdict. 
See Coleman, 109 S.W.3d at 111; Minjarez v. Minjarez, 495 S.W.2d 630, 632
(Tex.Civ.App.–Amarillo 1973, no writ).
          Ruston asserts that the record does not adequately support the trial court’s final
decree restricting his possession of and access to C.H.S. between the ages of three and
five years old. Specifically, he asserts the restrictions are unreasonable because his drug
relapses occurred more than two years prior to the final hearing, his cessation of his bipolar
medication in March 2006 was at the request of his doctors after he suffered a bad reaction
following surgery, and he has successfully served as J.S.’s primary caretaker since March
2005. 
          Having reviewed the hearing transcript, the final decree, and the trial court’s findings
of fact and conclusions of law, we find the trial court restricted Ruston’s possession and
access to C.H.S. due to issues related to Ruston’s drug dependence, diagnosis of a type
one bipolar disorder, history of drug relapses, and past medication cessation.


 During a
five year period preceding the final hearing, Ruston had undergone four drug relapses
where he used methamphetamine. His relapses in 2002-2003 occurred when he was
attending AA meetings and after he began receiving treatment from a physician for his
bipolar condition. There was also evidence that Ruston did not take his bipolar diagnosis
seriously and quit his medication, AA meetings, and medical treatment by September 2005
at the latest. Thereafter, he suffered two additional drug relapses in mid-to-late December
2005.
           Holly testified Ruston hid his drug dependence and underplayed his bipolar
diagnosis while they were dating and after they were married. When Ruston suffered his
two drug relapses in mid-to-late December 2005, he simply disappeared and abandoned
his parenting responsibilities. She also testified that, after Ruston began seeing Patel in
December 2005, there were times Ruston indicated he didn’t need his medication and
would subsequently suffer from mood swings, agitation, distraction, destructibility, and
pressured speech. She counted his pills and determined he was not taking his medication
as prescribed. She also testified that Ruston provided little care for C.H.S. after he was
born. During the interview process with Davis, Ruston reported he was angry and verbally
aggressive with Holly and described recurrent angry exchanges with her during their
relationship. 
          Given this evidence, we cannot say that the trial court abused its discretion by
issuing a modified possession order. Whether evidence of substance abuse is too remote
is generally left to the sound discretion of the trial court. Kortla, 718 S.W.2d at 855
(custody not in the best interest even though appellant had not used drugs for two years);
Standifer v. Schmidt, 366 S.W.2d 947, 948 (Tex.Civ.App.–San Antonio 1963, no writ)
(custody not in the best interest even though divorced spouse had not used narcotics for
two years and evidence showed spouse was “otherwise a fine person”). Finally, although
Ruston produced evidence that he has successfully served as J.S.’s caretaker following
his first divorce, the ages of the two children are substantially dissimilar–at the time of trial,
C.H.S. was less than two years old while J.S. was in excess of six years old.


 
          Accordingly, we find the trial court did not abuse its discretion by entering the
modified possession order. See In re Walters, 39 S.W.3d at 286-87. Issue one is
overruled.     
          III.      Continuing Medical Treatment and Reporting Requirement
          The Texas Family Code provides that, if the trial court determines that the parties
have a history of conflict in resolving an issue of conservatorship or possession and
access, the court may order a party to participate in counseling with a mental health
professional. § 153.010. See Brook v. Brook, 865 S.W.2d 166, 174 (Tex.App.–Corpus
Christi 1993), aff’d, 881 S.W.2d 297 (Tex. 1994).


 Moreover, regarding the trial court’s
ability to fashion an order regarding possession and access, the Texas Supreme Court has
stated as follows:
we are of the view that a suit properly invoking the jurisdiction of a court with
respect to custody and control of a minor child vests that court with decretal
powers in all relevant custody, control, possession and visitation matters
involving the child. The courts are given wide discretion in such proceedings.
[citations omitted]. Technical rules of practice and pleadings are of little
importance in determining issues concerning the custody of children.
[citations omitted]. It is beside the point that in the instant proceeding the
trial court, whether erroneously or not, construed the pleadings of petitioner
as seeking only a modification of visitation rights; the point is that once the
child is brought under its jurisdiction by suit and pleading cast in terms of
custody and control, it becomes the duty of the court in the exercise of its
equitable powers to make proper disposition of all matters comprehended
thereby in a manner supported by the evidence.
 
Leithhold v. Plass, 413 S.W.2d 698, 701 (Tex. 1967) (emphasis added).



 
          At the final hearing, Davis testified that Ruston’s bipolar disorder and drug
dependence would interfere with his interaction with C.H.S. if Ruston did not maintain
stability in his behavior and treatment program.


 He opined that Ruston required ongoing
treatment with Randolph and Patel because of his problematic interactions with Holly, his
desire to see C.H.S. and his history of failed treatment for substance abuse and bipolar
disorder. Davis recommended that Ruston continue interaction with Randolph and Patel
until Ruston and his doctors concurrently agreed that he no longer needed medication
and/or individual therapy.



          Patel described Ruston’s illness as life-long. He indicated there would always be
a concern that Ruston’s symptoms would reappear if he ceased medicating and used
drugs again. In fact, he testified that it is common for a person with a history of substance
abuse intermixed with a bipolar condition, once in awhile, to experience substance abuse
relapses. Although Ruston had a “very good record” over the past two years of compliance
with his prescription drug program and had not used illegal drugs since he started
treatment, Patel testified “[t]he concern is always there, once a person has issues with
drugs and alcohol, the concern is always there.”
          Given Ruston’s history of discontinued treatment for bipolar disorder, drug relapses
and his future prognosis, we cannot say it would be an abuse of discretion to impose the
conditions ordered, i.e., continued counseling and prescription medical treatment for his
bipolar condition, weekly attendance at AA meetings, and a status report every six months
from a mental health professional, as a condition of possession and access. See Brook,
865 S.W.2d at 174 (not an abuse of discretion to order psychological counseling
indefinitely). That’s not, however, what the decree of divorce ordered.
          Ruston contends the trial court’s decree deprives him of the protections afforded
incapacitated persons under the Texas Probate Code because the order is not related in
any manner to the child the subject of this suit. See Tex. Prob. Code Ann. §§ 601-726
(Vernon 2003). We agree. The conditions now appear in the decree as stand-alone
orders of indefinite duration. They are not conditions precedent to possession and access,
and compliance is not a requirement in order to obtain or enhance Ruston’s rights of
possession and access. As such, they do not fall within the broad discretion of the trial
court afforded by § 153.010 of the Texas Family Code. Accordingly, Ruston’s second
issue is sustained.
Conclusion
          Because we are unable to determine how the trial court would exercise its discretion
in relating the requirements imposed to the rights of possession and access granted, we
reverse the trial court’s judgment in part and delete the two paragraphs set forth in footnote
3 supra, and remand this cause for further proceedings consistent with this opinion. In all
other respects, the judgment is affirmed.
 
                                                                           Patrick A. Pirtle

                                                                                 Justice







           



            

 

.