NO. 07-08-0268-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D 

JULY 7, 2009

______________________________
 

IN THE MATTER OF THE MARRIAGE OF 
RUSTON CRAIG SWIM AND HOLLY LYNN HANSON SWIM 
AND IN THE INTEREST OF C.H.S., A CHILD,

_________________________________

FROM THE COUNTY COURT AT LAW NO. 3 OF LUBBOCK COUNTY;

NO. 2007-538,917; HONORABLE PAULA LANEHART, JUDGE

_______________________________


Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.


OPINION


          Appellant, Ruston Craig Swim, appeals certain provisions of the divorce decree
dissolving his marriage to Appellee, Holly Lynn Hanson Swim. By two issues, Appellant
contends the trial court (1) abused its discretion by failing to enter a standard possession
order


 pertaining to his possession of and access to their minor child, C.H.S., and (2) erred
by imposing certain orders pertaining to counseling, medical treatment, and reporting. We
affirm in part and reverse and remand in part.
Background
          Ruston does not directly contest the legal or factual sufficiency of the evidence to
sustain the trial court’s decision, nor does he contest the property division, child support,
appointment of joint managing conservators, his limited access to C.H.S. before age three,
the imposition of a standard possession order at age five, or Holly’s right to determine
C.H.S.’s primary residence, therefore, we will only discuss those factual elements that are
germane to our opinion. 
          The parties were married September 6, 2005, and had one child, C.H.S., who was
born on May 22, 2006. On April 17, 2007, Ruston filed his original petition for divorce.
Holly subsequently filed her answer and a counter-petition. Both parents sought
appointment as C.H.S.’s joint managing conservator. While Holly sought designation as
the conservator with exclusive right to designate the child’s primary residence, Ruston left
that determination to the discretion of the trial court. A bench trial was held February 5, 6
and March 5, 2008.
          The evidence at trial established that Ruston suffered from a psychological disorder
and drug abuse problem which originated in his teens and continued throughout most of
his adult life. Prior to the marriage, Dr. Raymond Martin diagnosed Ruston as bipolar and
prescribed medication to treat his condition. Ruston also began therapy sessions for
substance abuse and family counseling with Patrick D. Randolph, a licensed psychologist. 
In September 2003, Ruston began attending Alcoholic’s Anonymous (AA) meetings. 
Thereafter, in December 2003, he unilaterally terminated his treatment with Martin and
Randolph. 
          When Ruston and his first wife, Patricia, were divorced in March 2005, Ruston
became the primary caretaker for their four year old son, J.S.


 When Ruston married Holly
in September 2005, he was neither taking medication for his bipolar condition nor attending
counseling or AA for his substance abuse issues. In December of 2005, Ruston relapsed,
using methamphetamine twice. Thereafter, Ruston sought treatment from Dr. Arun Patel,
a psychiatrist, who also diagnosed Ruston as having a bipolar disorder and again
prescribed medication for his condition. 
          Phillip J. Davis, a psychologist, testified he conducted an assessment to determine
whether Ruston’s drug dependence and/or bipolar disorder would interfere with Ruston’s
ability to effectively interact with C.H.S. Davis also diagnosed Ruston as bipolar and his
assessment revealed Ruston had a history of beginning and terminating treatment. He
opined that Ruston suffered from recurrent experiences, or episodes, of depressive
behavior and anxiety accompanied by an ongoing struggle with abstinence from chemical
dependency. Davis concluded that Ruston’s bipolar disorder and drug dependence could
interfere with his interaction with C.H.S. Although Ruston was engaged in a program of
self help, individual therapy, and medical intervention, Davis opined there could be a
problem if he did not maintain stability in his behavior and treatment program. 
          After his initial assessment, Davis referred Ruston to Randolph for individual therapy
and Patel for medication management. Davis believed a continuing relationship between
Ruston and his medical providers was important in terms of Ruston’s visitations with C.H.S.
because of Ruston’s problematic interactions with Holly, his desire to see C.H.S., and his
report of failed treatment for substance abuse and discontinuance of his medication for his
bipolar condition. He recommended Ruston continue interaction with Patel and Randolph
until he and his doctors concurrently agreed that Ruston no longer needed medication
and/or individual therapy. 
          At trial, Randolph testified Ruston initially started individual psychotherapy for his
bipolar disorder in January 2003. However, in December 2003, Ruston terminated his
therapy with Randolph until Davis referred him in May 2007. Randolph indicated that,
since Davis’s referral, Ruston had been regularly attending AA meetings at least four times
a week as well as pursuing a spiritually-based treatment. He further testified Ruston was
compliant with his psychotherapy and actively participating in cultural, charitable, and
religious organizations. Randolph considered Ruston’s vocational success managing a
brokerage firm as a strong indicator of the success of his treatment. As a result of
Ruston’s progress, their sessions became less frequent. Randolph opined his therapy
sessions were no longer necessary.
          Patel testified he first saw Ruston following his December 2005 relapse. At that
time, Ruston was struggling with symptoms of severe depression and anxiety. His initial
diagnosis was bipolar disorder–type one, generalized anxiety disorder and substance
abuse. In his opinion, Ruston was always going to have his symptoms which would
reappear if he ceased medicating and there would always be a concern he would use
drugs again. He described Ruston’s illness as life-long. 
          Holly, a pediatrician, testified that, while they were dating, Ruston hid his drug
dependence problem and diagnosis of bipolar disorder. The month after their wedding, the
couple sought marital counseling after Ruston yelled at her concerning money matters,
called her obscene names, and began throwing things in the house. After Ruston started
seeing Patel and reestablished a medication regimen for his bipolar disorder, his mood
became more stable; however, Holly remained concerned. She began counting his
medicine and determined there were times when he was not taking his medication. Holly
testified Ruston indicated he didn’t think he needed his medication and that these
pronouncements were usually followed by mood swings, agitation, distraction,
destructibility, and pressured speech. 
          During the divorce proceedings, Holly sought a court order that would monitor
Ruston’s compliance with his treatment for his bipolar disorder and substance abuse to
assure C.H.S. would be going to a safe environment on visitations. Determining whether
Ruston was compliant with his medication and treatment was paramount to Holly.
          Ruston, a vice-president and general manager of operations of a food brokerage, 
 testified he discontinued his treatment in December 2003 because, at the time, he did not
want to accept his diagnosis. Ruston could not explain why he relapsed in December
2005. He testified that since he started seeing Patel he had followed his prescription drug
program with the exception of a period of time following surgery when he ceased taking his
medication due to doctors’ orders. He also acknowledged that he had a substance abuse
problem and was bipolar. 
          On May 29, 2008, the trial court signed a Decree of Divorce dissolving the marriage
between Ruston and Holly. The decree appointed Ruston and Holly as joint managing
conservators of C.H.S., with Holly having the right to establish the child’s primary
residence. The decree also contained provisions pertaining to counseling for Ruston


 and
Ruston’s possession of and access to the child. 
                                                            Discussion
          Ruston asserts that the decree’s provisions governing his possession of and access
to C.H.S. between the ages of three and five are invalid because the imposition of a limited
possession schedule is unsupported by the record.


 He next asserts the trial court
exceeded its authority by (1) requiring him to continue taking medications prescribed for
his bipolar disorder, (2) requiring him to continue counseling with a mental health
professional, (3) requiring him to continue to attend Alcoholics Anonymous or Narcotics
Anonymous weekly, and (4) requiring a mental health professional to submit a written
report every six months.
          Holly asserts the record contains adequate evidence to support the modified order
of possession and access. She also asserts the trial court did not exceed its authority by
requiring Ruston to “continue” therapy, medication, and periodic reporting that was in place
during the divorce proceedings. 
          I.        Standard of Review
          A trial court has broad discretion to fashion the terms of a decree related to custody,
visitation, and possession; see In re Doe 2, 19 S.W.3d 278, 281 (Tex. 2000); Gillespie v.
Gillespie, 644 S.W.2d 449, 451 (Tex. 1982), and may be reversed only if it appears that
the court abused its discretion in light of the record as a whole. Id. A trial court abuses its
discretion when it acts arbitrarily or unreasonably, without reference to any guiding rules
or principles. Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990). See In Interest of
Doe, 917 S.W.2d 139, 141 (Tex.App.–Amarillo 1996, writ denied). Furthermore, we may
not reverse the trial court’s judgment simply because we disagree with the outcome. 
Rather, we must conclude that the decision lacked basis in fact or law or involved a
misapplication of fact to law. In re C.R.T., 61 S.W.3d 62, 65 (Tex.App.–Amarillo 2001, pet.
denied). 
          Under the abuse of discretion standard, legal and factual insufficiency are not
independent grounds of error, “but are relevant factors in assessing whether the trial court
abused its discretion.” Ditraglia v. Romano, 33 S.W.3d 886, 889 (Tex.App.–Austin 2000,
no pet.) (quoting Doyle v. Doyle, 955 S.W.2d 478, 479 (Tex.App.–Austin 1997, no pet.). 
Further, there is no abuse of discretion where the record contains some evidence of a
substantive and probative character in support of the trial court’s decision. Baltzer v.
Medina, 240 S.W.3d 469, 475 (Tex.App.–Houston [14th Dist.] 2007, no pet.). 
          II.       Conservatorship – Possession and Access
                     A.       Statutory Scheme
          In matters of conservatorship, the public policy of this State is to assure continuing
contact between children and parents who have established the ability to act in their child’s
best interest, provide a safe, stable, and nonviolent environment for the child and
encourage parents to share in their child’s development after separation or divorce. Tex.
Fam. Code Ann. § 153.001 (Vernon 2008).


 When determining issues related to
conservatorship or possession of and access to the child, the best interest of the child is
the primary consideration. § 153.002. See In re M.S., 115 S.W.3d 534, 547 (Tex. 2003). 
          If, as here, both parents are appointed as the child’s conservators, the trial court
specifies the rights and duties that are to be exercised by the parents. § 153.071. While
the guidelines established in the standard possession order are intended to guide courts
as to the minimum possession for a joint managing conservator; § 153.251(a), there is a
rebuttable presumption that the standard possession order provides the reasonable
minimum possession of a child for a parent named as a joint managing conservator; §
153.252(1), and that the order is in the child’s best interest. § 153.252(1) & (2). 
          If there is sufficient evidence to rebut this presumption, however, the trial court may
deviate from the standard possession order. § 153.256. See Niskar v. Niskar, 136 S.W.3d
749, 756 (Tex.App.–Dallas 2004, no pet.). When deviating from the standard possession
order, the trial court may consider: (1) the age, developmental status, circumstances,
needs, and the best interest of the child; (2) the circumstances of the managing
conservator and of the parent named as a possessory conservator; and (3) any other
relevant factor. § 153.256. Further, a reviewing court’s holding that a trial court did not
abuse its discretion implies that the evidence contained in the record rebutted the
presumption that the standard possession order was reasonable and in the child’s best
interest. See Gray v. Gray, 971 S.W.2d 212, 216 n.2 (Tex.App.–Beaumont 1998, no pet.)
(citing In Interest of Doe, 917 S.W.2d 139 (Tex.App.–Amarillo 1996, pet. denied)). 
                     B.       Standard Possession Order–Best Interest of The Child
          In determining the issues of conservatorship and possession of a child, the trial
court is given wide latitude in determining the best interest of the child and will be reversed
only for an abuse of discretion. In re C.R.T., 61 S.W.3d at 65 (citing Gillespie v. Gillespie,
644 S.W.2d 449, 451 (Tex. 1982). This is, in part, because the trial court is in a better
position having “faced the parties and their witnesses, observed their demeanor, and had
the opportunity to evaluate the claims made by each parent.” Coleman v. Coleman, 109
S.W.3d 108, 111 (Tex.App.–Austin 2003, no pet.) (citing Martinez v. Molinar, 953 S.W.2d
399, 403 (Tex.App.–El Paso 1997, no writ)). Thus, when the testimony of witnesses is
conflicting, this Court will not disturb the credibility determinations made by the trial court
or jury and we will presume that the factfinder resolved any conflict in favor of the verdict. 
See Coleman, 109 S.W.3d at 111; Minjarez v. Minjarez, 495 S.W.2d 630, 632
(Tex.Civ.App.–Amarillo 1973, no writ).
          Ruston asserts that the record does not adequately support the trial court’s final
decree restricting his possession of and access to C.H.S. between the ages of three and
five years old. Specifically, he asserts the restrictions are unreasonable because his drug
relapses occurred more than two years prior to the final hearing, his cessation of his bipolar
medication in March 2006 was at the request of his doctors after he suffered a bad reaction
following surgery, and he has successfully served as J.S.’s primary caretaker since March
2005. 
          Having reviewed the hearing transcript, the final decree, and the trial court’s findings
of fact and conclusions of law, we find the trial court restricted Ruston’s possession and
access to C.H.S. due to issues related to Ruston’s drug dependence, diagnosis of a type
one bipolar disorder, history of drug relapses, and past medication cessation.


 During a
five year period preceding the final hearing, Ruston had undergone four drug relapses
where he used methamphetamine. His relapses in 2002-2003 occurred when he was
attending AA meetings and after he began receiving treatment from a physician for his
bipolar condition. There was also evidence that Ruston did not take his bipolar diagnosis
seriously and quit his medication, AA meetings, and medical treatment by September 2005
at the latest. Thereafter, he suffered two additional drug relapses in mid-to-late December
2005.
           Holly testified Ruston hid his drug dependence and underplayed his bipolar
diagnosis while they were dating and after they were married. When Ruston suffered his
two drug relapses in mid-to-late December 2005, he simply disappeared and abandoned
his parenting responsibilities. She also testified that, after Ruston began seeing Patel in
December 2005, there were times Ruston indicated he didn’t need his medication and
would subsequently suffer from mood swings, agitation, distraction, destructibility, and
pressured speech. She counted his pills and determined he was not taking his medication
as prescribed. She also testified that Ruston provided little care for C.H.S. after he was
born. During the interview process with Davis, Ruston reported he was angry and verbally
aggressive with Holly and described recurrent angry exchanges with her during their
relationship. 
          Given this evidence, we cannot say that the trial court abused its discretion by
issuing a modified possession order. Whether evidence of substance abuse is too remote
is generally left to the sound discretion of the trial court. Kortla, 718 S.W.2d at 855
(custody not in the best interest even though appellant had not used drugs for two years);
Standifer v. Schmidt, 366 S.W.2d 947, 948 (Tex.Civ.App.–San Antonio 1963, no writ)
(custody not in the best interest even though divorced spouse had not used narcotics for
two years and evidence showed spouse was “otherwise a fine person”). Finally, although
Ruston produced evidence that he has successfully served as J.S.’s caretaker following
his first divorce, the ages of the two children are substantially dissimilar–at the time of trial,
C.H.S. was less than two years old while J.S. was in excess of six years old.


 
          Accordingly, we find the trial court did not abuse its discretion by entering the
modified possession order. See In re Walters, 39 S.W.3d at 286-87. Issue one is
overruled.     
          III.      Continuing Medical Treatment and Reporting Requirement
          The Texas Family Code provides that, if the trial court determines that the parties
have a history of conflict in resolving an issue of conservatorship or possession and
access, the court may order a party to participate in counseling with a mental health
professional. § 153.010. See Brook v. Brook, 865 S.W.2d 166, 174 (Tex.App.–Corpus
Christi 1993), aff’d, 881 S.W.2d 297 (Tex. 1994).


 Moreover, regarding the trial court’s
ability to fashion an order regarding possession and access, the Texas Supreme Court has
stated as follows:
we are of the view that a suit properly invoking the jurisdiction of a court with
respect to custody and control of a minor child vests that court with decretal
powers in all relevant custody, control, possession and visitation matters
involving the child. The courts are given wide discretion in such proceedings.
[citations omitted]. Technical rules of practice and pleadings are of little
importance in determining issues concerning the custody of children.
[citations omitted]. It is beside the point that in the instant proceeding the
trial court, whether erroneously or not, construed the pleadings of petitioner
as seeking only a modification of visitation rights; the point is that once the
child is brought under its jurisdiction by suit and pleading cast in terms of
custody and control, it becomes the duty of the court in the exercise of its
equitable powers to make proper disposition of all matters comprehended
thereby in a manner supported by the evidence.
 
Leithhold v. Plass, 413 S.W.2d 698, 701 (Tex. 1967) (emphasis added).



 
          At the final hearing, Davis testified that Ruston’s bipolar disorder and drug
dependence would interfere with his interaction with C.H.S. if Ruston did not maintain
stability in his behavior and treatment program.


 He opined that Ruston required ongoing
treatment with Randolph and Patel because of his problematic interactions with Holly, his
desire to see C.H.S. and his history of failed treatment for substance abuse and bipolar
disorder. Davis recommended that Ruston continue interaction with Randolph and Patel
until Ruston and his doctors concurrently agreed that he no longer needed medication
and/or individual therapy.



          Patel described Ruston’s illness as life-long. He indicated there would always be
a concern that Ruston’s symptoms would reappear if he ceased medicating and used
drugs again. In fact, he testified that it is common for a person with a history of substance
abuse intermixed with a bipolar condition, once in awhile, to experience substance abuse
relapses. Although Ruston had a “very good record” over the past two years of compliance
with his prescription drug program and had not used illegal drugs since he started
treatment, Patel testified “[t]he concern is always there, once a person has issues with
drugs and alcohol, the concern is always there.”
          Given Ruston’s history of discontinued treatment for bipolar disorder, drug relapses
and his future prognosis, we cannot say it would be an abuse of discretion to impose the
conditions ordered, i.e., continued counseling and prescription medical treatment for his
bipolar condition, weekly attendance at AA meetings, and a status report every six months
from a mental health professional, as a condition of possession and access. See Brook,
865 S.W.2d at 174 (not an abuse of discretion to order psychological counseling
indefinitely). That’s not, however, what the decree of divorce ordered.
          Ruston contends the trial court’s decree deprives him of the protections afforded
incapacitated persons under the Texas Probate Code because the order is not related in
any manner to the child the subject of this suit. See Tex. Prob. Code Ann. §§ 601-726
(Vernon 2003). We agree. The conditions now appear in the decree as stand-alone
orders of indefinite duration. They are not conditions precedent to possession and access,
and compliance is not a requirement in order to obtain or enhance Ruston’s rights of
possession and access. As such, they do not fall within the broad discretion of the trial
court afforded by § 153.010 of the Texas Family Code. Accordingly, Ruston’s second
issue is sustained.
Conclusion
          Because we are unable to determine how the trial court would exercise its discretion
in relating the requirements imposed to the rights of possession and access granted, we
reverse the trial court’s judgment in part and delete the two paragraphs set forth in footnote
3 supra, and remand this cause for further proceedings consistent with this opinion. In all
other respects, the judgment is affirmed.
 
                                                                           Patrick A. Pirtle

                                                                                 Justice







           



            

 

.