# Court of Appeals
## Tenth Appellate District of Texas

---

10-23-00349-CR

---

Thomas Webb,
Appellant

v.

The State of Texas,
Appellee

---

On appeal from the
19th District Court of McLennan County, Texas
Senior Judge Roy Sparkman, presiding
Trial Court Cause No. 2018-1415-C1

---

CHIEF JUSTICE JOHNSON delivered the opinion of the Court.

## MEMORANDUM OPINION

This court withdraws its opinion and judgment dated August 28, 2025. The following is now the opinion and judgment of this court. A jury convicted Appellant Thomas Webb of the first-degree felony offense of continuous sexual abuse of a young child. *See* TEX. PENAL CODE ANN. § 21.02(b). The jury assessed punishment at confinement for life, and the trial court sentenced him accordingly. In three issues, Webb argues that (1) the evidence is insufficient

to support his conviction because there was a material and fatal variance between the indictment and the evidence at trial, (2) the trial court abused its discretion in admitting an outcry statement, and (3) the judgment should be revised to reflect the correct date of the offense. We will modify the judgment and affirm as modified.

## A. Background

T.C.[1] and K.C. are half-sisters with the same father and different mothers. T.C. lived with her mother, her stepfather, and her siblings. At some point, Webb, who is T.C.'s mother's uncle, lived with T.C. and her family. On occasion, K.C. would come to T.C.'s house to visit.

T.C., who was nineteen years old at the time of trial, testified that when she was around nine years old, Webb came into her room and touched her vagina over her clothes. She recalled that every other week from the time she was nine years old until she was twelve years old, Webb would take her to the store to buy her a toy and that he would touch her vagina over her clothes while they were in his truck. T.C. described that when she was twelve years old, she and K.C. were playing a game of hide-and-seek, and she hid in the closet. T.C. said that Webb came into the closet and touched her vagina over her clothes. T.C. later told her dad that Webb had touched her.

---

[1] T.C. and K.C. were both minors at the time of the offense. To protect their identities, we will use initials to refer to them.

K.C. testified at trial that on one occasion when she was at T.C.'s house, she and T.C. went into Webb's bedroom. K.C. said that Webb pulled down his boxer shorts and exposed his penis to the girls. She also described that another time when she went to visit T.C., she was in Webb's room hiding under his bed when she observed Webb throw T.C. onto his bed and get on top of her. K.C. said that T.C. was yelling for Webb to get off of her. K.C. testified at trial that Webb never touched her but that one time he offered to give her money if she would let him touch her.

The father of T.C. and K.C. testified at trial that T.C. told him Webb had touched both her and K.C. T.C. also told her father that Webb exposed himself to both girls. T.C.'s father contacted the sheriff's office and gave a statement. McLennan County Sheriff Detective Rose Peterson was assigned to the case.

Detective Peterson testified at trial that she scheduled a forensic interview for both T.C. and K.C. at the Children's Advocacy Center. T.C. and K.C. both made outcries of sexual abuse during their respective forensic interviews. Detective Peterson then began interviewing other people involved in the case. During her investigation, Detective Peterson learned that there were other victims. Detective Peterson testified that she interviewed C.Y.[2] C.Y. told her that when he was twelve years old, he shared a bunk bed with

---

[2] Because C.Y. and K.Y. were minors at the time of the allegations, we will refer to him by initials to protect their identities.

his sister, K.Y. He described a time when he was on the top bunk, and he saw Webb on the bottom bunk with K.Y. According to C.Y., he saw Webb touching K.Y.'s vagina. Detective Peterson testified that C.Y. said when Webb saw that he was watching, he told C.Y. to take out his penis. Webb then performed oral sex on C.Y.

K.Y. testified at trial that she is related to Webb by marriage. She said that when she was around thirteen years old, Webb touched her vagina. K.Y. testified that she lived with Webb when she was around fourteen years old. During that time, she said that Webb regularly touched her vagina with his mouth and had vaginal sex with her. K.Y. further testified that she saw Webb perform oral sex on C.Y.

C.Y. also testified at trial and described the events that occurred in the bunk beds with Webb. C.Y. said that he saw Webb put his mouth on K.Y.'s private area. C.Y. described that Webb then undid C.Y.'s pants and performed oral sex on C.Y.

## B. Issue One

In his first issue, Webb argues that the evidence is insufficient to support his conviction because there was a material and fatal variance between the indictment and the evidence at trial.

### 1. Authority

The Court of Criminal Appeals has expressed our standard of review of sufficiency issues as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.
>
> We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the

case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732–33 (Tex. Crim. App. 2018).

A variance occurs when there is a discrepancy between the allegations in the charging instrument and the evidence presented at trial. *Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App. 2012). "In a variance situation, the State has proven the defendant guilty of a crime but has proven its commission in a manner that varies from the allegations in the charging instrument." *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001).

In an evidentiary-sufficiency analysis, there are two types of variances: material and immaterial variances. *Thomas v. State*, 444 S.W.3d 4, 9 (Tex. Crim. App. 2014). A variance is material if it: (1) fails to adequately inform the defendant of the charge against him or (2) subjects the defendant to the risk of being prosecuted later for the same crime. *Ramjattansingh v. State*, 548 S.W.3d 540, 547 (Tex. Crim. App. 2018). "Only material variances will affect the hypothetically correct jury charge" and render the evidence legally insufficient. *Hernandez v. State*, 556 S.W.3d 308, 312 (Tex. Crim. App. 2017).

On the other hand, "[a]llegations giving rise to immaterial variances may be disregarded in the hypothetically correct [jury] charge." *Gollihar*, 46 S.W.3d at 257.

2. Discussion

The indictment used the pseudonyms Jane Doe and Sarah Doe to refer to T.C. and K.C. During trial, T.C. and K.C. were both referred to by their legal names. No pseudonyms were used at trial. Webb specifically argues that the State offered no evidence at trial to establish which pseudonym applied to which victim or if either pseudonym applied to either T.C. or K.C.

In *Stevens v. State*, the Court held that the fatal variance doctrine is not applicable to pseudonym cases so long as the defendant's due process right to notice is satisfied. 891 S.W.2d 649, 651 (Tex. Crim. App. 1995) (en banc). Webb argues, however, that *Stevens* is inapplicable because it was a case involving only one victim and one pseudonym. He contends that unlike the appellant in *Stevens*, his due process rights were not satisfied.

Stevens specifically stated that the "pseudonym is used to protect the victim—not to deprive the defendant of notice." *Stevens*, 891 S.W.2d at 651. There is nothing to suggest that *Stevens* is not applicable to cases involving more than one victim.

In *Maldonado v. State*, there were multiple victims referred to by initials in the indictment. No. 13-08-00360-CR, 2010 WL 2473772 at *1 fn 2 (Tex.

App.—Corpus Christi–Edinburgh June 17, 2010, no pet.) (mem. op., not designated for publication). The appellant argued that he was denied due process because there was a material and fatal variance between the allegations in the indictment and the proof at trial. *Id.* at \*4. The appellant claimed that because the State used a pseudonym for each child, there was no evidence that the children who testified at trial were the same persons named in the indictment. *Id.* The court applied *Stevens* and noted that the fatal variance doctrine is inapplicable to pseudonym cases so long as the defendant's due process right to notice is satisfied. *Id.* at \*5. The court noted that the appellant did not claim that he did not have actual notice of the identity of the children named in the indictment or that he was not given proper notice of the charges against him. *Id.* The court held that there was no material variance. *Id.*

In *Greeno v. State*, the three victims were referred to by initials in the indictment. 46 S.W.3d 409, 412 (Tex. App.—Houston [14th Dist.] 2001, no pet.). The appellant argued that there was no proof at trial to establish the victims who testified at trial were the same persons identified in the indictment. *Id.* at 412–13. Again, the court noted that the fatal variance doctrine is inapplicable to pseudonym cases so long as the defendant's due process right to notice is satisfied. *Id.* at 414. The court held because the

appellant was not surprised by the victim's identity, his due process rights were satisfied and there was no material variance. *Id.*

We agree with the courts in *Maldonado* and *Greeno* and conclude that in cases with more than one victim, the fatal variance doctrine is inapplicable to pseudonym cases so long as the defendant's due process right to notice is satisfied. We must therefore determine whether Webb's due process right to notice was satisfied. *See Stevens*, 891 S.W.2d at 651.

Webb does not claim that he did not have notice of the identity of the children named by pseudonym in the indictment or that he did not have notice of the charges against him. *See Maldanado*, 2010 WL 2473772 at *5. Further, he did not object at trial that he was unable to prepare his defense or that he was confused about the victim's identities due to the use of the pseudonyms. *Id.*

Both victims were identified by their legal names on the State's witness list. In its Notice of Intent to Use Child Abuse Victim's Hearsay Statement, the State specifically informed Webb of "intent to offer hearsay statements of the complainants, Jane Doe (T.C.) and Sarah Doe (K.C.), the victims of child abuse." In addition, at trial during opening statements, Webb's counsel informed the jury that they would hear from T.C. and K.C. and stated, "of course their names are, you know Doe." Therefore, any variance between the indictment and the proof offered at trial was not material as it did not operate

to Webb's surprise or deny him his due process right to notice. *See Id.* We overrule the first issue.

## C. Issue Two

In his second issue, Webb argues that the trial court abused its discretion by admitting the outcry statement of an extraneous victim of sexual abuse against a child when the outcry was first made when the victim was an adult.

1. Authority

Article 38.072 of the Texas Code of Criminal Procedure provides that some hearsay statements of a child are admissible in prosecuting certain offenses. TEX. CODE CRIM. PROC. ANN. art. 38.072. The statute applies to statements that describe the alleged offense and that (1) were made by the child against whom the offense allegedly was committed, and (2) were made to the first person, eighteen years of age or older, other than the defendant, to whom the child made a statement about the offense. *Id.*

We review a trial court's ruling regarding an outcry witness designation for an abuse of discretion. *See Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990). We will not disturb the trial court's decision "if the ruling was within the zone of reasonable disagreement." *Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008). We will uphold an evidentiary ruling on appeal if it is correct on any theory of law that finds support in the record. *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006).

2. Discussion

The State sought to admit evidence of extraneous sexual offenses or acts committed by Webb. *See* TEX. CRIM. PROC. ANN. art. 38.37. The State called Detective Peterson to testify as an outcry witness pursuant to article 38.072 for the statements C.Y. made to her concerning sexual abuse by Webb. C.Y. was under the age of fourteen at the time of the sexual abuse, but he was twenty-three years old when he made the statements to Detective Peterson. The trial court allowed Detective Peterson to testify as an outcry witness.

Webb argues that C.Y.'s statement to Detective Peterson was not admissible as an outcry statement under article 38.072 because he made the statement when he was an adult. The State acknowledges that this Court has not ruled on whether an outcry statement is admissible when it relates to an incident of sexual abuse when the victim was a child, but the child did not tell an adult until after the child became an adult. However, our sister courts have held that an outcry made after the child victim becomes an adult is not admissible under article 38.072. *Cordero v. State*, 444 S.W.3d 812, 819 (Tex. App.—Beaumont 2014, pet. ref'd); *Harvey v. State*, 123 S.W.3d 623, 629 (Tex. App.—Texarkana 2003, pet. ref'd). Assuming without deciding that the trial court erred in allowing Detective Peterson to testify as an outcry witness, we hold that Webb was not harmed by any error.

The erroneous admission of hearsay testimony under the outcry statute is non-constitutional error. *Gibson v. State*, 595 S.W.3d 321, 327 (Tex. App.—Austin 2020, no pet.); *Rosales v. State*, 548 S.W.3d 796, 808 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd). Non-constitutional error regarding the admission of evidence is harmful, and thus requires reversal, only if the error affects the defendant's substantial rights. *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018); *see* TEX. R. APP. P. 44.2(b); Tex. R. Evid. 103(a). Error affects the defendant's substantial rights when it has a substantial and injurious effect or influence in determining the jury's verdict. *Gonzalez*, 544 S.W.3d at 373. "If, [however,] we have a fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but a slight effect, we will not overturn the conviction." *Id.*

C.Y. testified at trial that Webb performed oral sex on him—the same facts described by Detective Peterson in her testimony concerning the outcry statement. In addition, K.Y. also testified that she observed Webb perform oral sex on C.Y. In cases involving the improper admission of outcry testimony, the error is generally harmless when the victim testifies to the same or similar statements that were improperly admitted or when other evidence setting forth the same facts is admitted without objection. *See, e.g., Allen v. State*, 436 S.W.3d 815, 822 (Tex. App.—Texarkana 2014, pet. ref'd); *Zarco v. State*, 210 S.W.3d 816, 833 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *West v. State*,

121 S.W.3d 95, 105 (Tex. App.—Fort Worth 2003, pet. ref'd); *Duncan v. State*, 95 S.W.3d 669, 672 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd).

Moreover, the trial court instructed the jury that they could not consider any testimony regarding Webb committing any offenses other than those alleged against him in the indictment unless they found beyond a reasonable doubt that Webb committed such other offenses. The trial court further instructed that the jury could only consider any such offenses for its bearing on relevant matters. We presume that the jury followed the trial court's instructions. *See Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005).

After an examination of the record as a whole, we conclude that any error in allowing Detective Peterson's testimony concerning C.Y.'s outcry statement did not influence the jury's verdict, or had but a slight effect, and was thus harmless. *See Gonzalez*, 544 S.W.3d at 373. We overrule Webb's second issue.

### D. Issue Three

In his third issue, Webb argues that the judgment states an incorrect date of the offense. The judgment reflects the date of the offense as "09/03/2003." Webb notes that he was found guilty of committing continuous sexual abuse of a young child "on or about the 1st day of October, 2013 through the 1st day of September, 2016." Webb asks this Court to modify the judgment to reflect the date of the offense as 10/01/2013 through 09/01/2016. The State concedes that the judgment should be modified as requested by Webb.

We have authority to modify incorrect judgments when the necessary information is available to do so. *See* TEX. R. APP. P. 43.2(b) (authorizing court of appeals to modify trial court's judgment and affirm it as modified); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993) (concluding that rules of appellate procedure empower courts of appeals to reform judgments). Accordingly, we modify the trial court's judgment to reflect the date of the offense as "10/01/2013 through 09/03/2016." We sustain Webb's third issue.

## E. Conclusion

Because we overruled Webb's first and second issues and sustained his third issue, we modify the judgment to reflect the date of the offense as "10/01/2013 through 09/03/2016," and we affirm the judgment as modified.

MATT JOHNSON
Chief Justice

OPINION DELIVERED and FILED: September 25, 2025

Before Chief Justice Johnson,
    Justice Smith, and
    Justice Harris
Affirmed as modified
Do not publish
CRPM

